## STATE vs. HARRY B. MILLS.

*Criminal Law—Assault—Intent to Commit Murder—Malice— Intent—Deadly Weapon—Trespasser—Arrest—Warrant—Protection of Life or Person—Defence of Dwelling House and Property.*

1. Murder, Malice, Assault and Intent defined.

2. Although a police officer does not have a warrant for the arrest of the person charged, yet as a public police officer he would have lawful authority to arrest without a warrant any person whom he found engaged in a breach of the peace, or any criminal offense, within his view or within his hearing.

3. But even though the officer has authority to make an arrest within the defendant's house and without a warrant, he must make the arrest in a lawful manner. He must use no more force and violence than is reasonably necessary to secure the arrest of the prisoner and convey him to a place of custody.

4. Although every man has the right to defend both his person and his dwelling house against imminent danger of unlawful injury to either, yet he cannot use a deadly weapon in that behalf unless there is a reasonable necessity and ground for doing so.

5. When a person is assailed within his own dwelling house he need not retreat, but may make his stand there, even though he can retreat with safety; but he has no right to kill his assailant unless it reasonably appears to be necessary to prevent the felonious destruction of his property or habitation, or the commission of a felony therein, or to defend himself or his family therein against a felonious assault upon life or person.

*(January* 17, 1908.)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*Daniel O. Hastings,* Deputy Attorney-General, for the State.

*J. Frank Ball* for the defendant.

Court of General Sessions, New Castle County, January Term, 1908.

INDICTMENT FOR ASSAULT WITH INTENT TO COMMIT MURDER, being No. 15, to the November Term, 1907.

GRUBB, J., charging the jury:

Gentlemen of the jury:—This indictment charges Harry B. Mills with an assault with intent to murder John J. Fox, the prosecuting witness, who is shown by the evidence without contradiction to have been at the time of the alleged offense a police officer in the City of Wilmington.

Under this indictment you may find the accused guilty either of assault with intent to murder, or of simple assault merely, or not guilty of either, according as the law and evidence may warrant your verdict.

In order to warrant you in finding the prisoner guilty in manner and form as indicted, it is incumbent upon the State to satisfy you by all the evidence in the case, beyond a reasonable doubt, not only that the alleged assault was committed by the accused, but also that it was made by him with the intent to murder the prosecuting witness, and in this county.

An assault simply is an unlawful attempt by violence to do injury to the person of another, the person making the attempt having the present ability to commit such injury. As in addition to the assault, the intent to murder is also alleged in the indictment, it is necessary for us to define what murder, within the meaning of the law, is.

To constitute the statutory offense of assault with intent to commit murder, the circumstances must be such as to show that it would have been murder if the assailant had accomplished such intent.

Murder is where a person of sound memory and discretion unlawfully kills any human being with malice aforethought either express or implied. Under the statute law of this State there are two degrees of murder, namely, first and second degrees. First degree murder is where the crime is committed with express

malice aforethought, or in perpetrating or attempting to perpetrate, a crime punishable with death. The express malice which constitutes murder of the first degree is proved by the circumstances attending the act, satisfactorily evidencing a sedate, deliberate purpose and formed design to kill another, such as the deliberate selection and use of a deadly weapon, lying in wait, antecedent threats, and the like. Implied or constructive malice is an inference or conclusion of law from the facts found by the jury. Therefore murder of the second degree may be proved where it is not satisfactorily shown by the evidence submitted to the jury that the killing was done with a sedate, deliberate purpose and formed design to take life, but is shown that it was done suddenly without justification or excuse, and without provocation sufficient to reduce the crime to the grade of manslaughter.

Malice is implied by law from every deliberate, cruel act committed by one person against another, no matter how sudden such act may be, for the law considers that he who does a cruel act voluntarily, does it maliciously.

If you should find that the defendant's act was such that if Fox's death had resulted therefrom, it would have been murder either of the first or second degree, then you are still to go further and be satisfied from the evidence that the prisoner made the assault wth the intent to murder him. Therefore it becomes necessary for us further to state to you how such intent to murder may be shown to your satisfaction. This intent may be shown by direct evidence of the intent, that is, by the express confession or declaration of the accused, or if there be no such direct evidence, the intent to murder may be proved by the acts or the conduct of the accused, and other circumstances, from which you may reasonably infer the intent charged. It is a principle of law that every man must be presumed to intend the natural and probable consequences of his own wilful act. So that from the use of a deadly weapon against another the jury

may infer the intent to commit murder, unless the circumstances of the case satisfy them to the contrary. It is for you to say from the testimony before you, whether there is such evidence as will warrant you in inferring that the accused assaulted Fox with intent to murder him.

In this case the State contends that John J. Fox was a police officer in the due discharge of his legal duty in a lawful manner. We say to you that even where it is shown in any instance, that the police officer did not have a warrant for the arrest of the person charged, yet as a public police officer he would have lawful authority to arrest without a warrant any person whom he found engaged in a breach of the peace, or any criminal offense, within his view or within his hearing. Therefore in this instance, if you find that Fox believed on reasonable grounds, that there was a fight going on in this house, or disorderly conduct going on there, or any criminal offense—that he saw it or heard screams of terror, outcries or other indications of its existence within that house, then he had a right and it was his duty to arrest within said house any and all the persons involved in such disorder or offense, whom he actually found there engaged in it at the time he came up, and take them before the proper tribunal, and, as we have said, without a warrant.

But conceding that the officer had the authority to make the arrest within the defendant's house and without a warrant, yet he must make the arrest in a lawful manner. A peace officer may use whatever force is reasonably necessary to prevent the escape and secure the arrest of any person he may find engaged in a breach of the peace, or any criminal offense, or manifestly about to engage in such an offense, but he must use no more force and violence than is reasonably necessary to secure the arrest and to convey him to a place of custody.

We think it proper to say to the jury that when a police officer who is appointed for the protection of the life, person and property of the citizens, men, women and children of the community, is doing the duty imposed upon him by law and by the

necessity of maintaining the public peace, order and security, and is performing that duty in a lawful manner, he is entitled to the support of every member of the community—judges, jurors and people—and to be free from unlawful resistance or injury by anyone.

In this case the defense contends that this firing was not done to resist a public officer, nor for the purpose of injuring a public officer; and further that it was not done for the purpose or with the intent of either assaulting or murdering Fox. The defense, admitting the firing, contends that the pistol was fired for a lawful purpose, the purpose of frightening away supposed assailants and thus protecting the defendant's dwelling house and his person from attack and injury, under the belief that some outside person was about to unlawfully attack and enter his dwelling house, and injure its inmates. The defendant also contends that the pistol was fired downward, and not in the direction of the police officer, and that, therefore, it was fired in a direction in which the defendant could not possibly have injured Fox. Whether that contention of the defense be true or not is for the jury to determine from all the evidence in the case. If you should believe that this pistol was fired toward the ground, and in a manner in which the natural and probable consequences of such firing would not have been to injure in any way the prosecuting witness, then you may, if you see proper upon all the evidence, find that to be a fact sufficient to disprove both the assault with intent to murder and the simple assault against Fox.

As the contention of the State is directly to the contrary, on the evidence, it is proper for us to charge you upon the law in regard to the right of defense within a man's own dwelling house. We will say generally to you that although every man has the right to defend both his person and his dwelling house against imminent danger of unlawful injury to either, yet he cannot use a deadly weapon in that behalf under any and all circumstances. Whether he can do so or not depends upon the

circumstances of the case and whether there is a reasonable necessity and ground for doing so.

The law on this subject, according to the weight of judicial authority in this State and elsewhere, appears to be that when a person is assailed within his own dwelling house he need not retreat, but may make his stand there, even though he could retreat with safety; that a mere civil trespass upon the occupant's dwelling house will not justify or excuse him in killing the trespasser; and that although such occupant may resist the trespasser by opposing force with force, yet he has no right to kill him unless it reasonably appears to be necessary to prevent the felonious destruction of his property or habitation, or the commission of a felony therein, or to defend himself or his family therein, against a felonious assault upon life or person.

Ordinarily the killing allowed in the defense of property is solely for the prevention of a felony.

The owner and occupant may kill the trespasser, if he honestly believes, on reasonable grounds, such killing to be necessary to protect his life or his person against a felonious assault by the trespasser in the course of the conflict with him in the rightful defense of his dwelling house and property.

*State vs. Horskin, Houston's Criminal Cases* 119; *State vs, Dugan, Houston's C. C.* 580-1; *Amer. and Eng. Ency. of Law, Vol.* 25, 276-7, and citations.

We think it is unnecessary for us to say more to you, excepting in response to the prayer of the defendant in regard to proof beyond reasonable doubt, and what reasonable doubt is.

The State must prove to your satisfaction, beyond a reasonable doubt, either the assault with intent to murder or the simple assault, before you can find a verdict of guilty of either offense. Reasonable doubt is not a vague, fanciful or merely possible doubt, but such a substantial doubt as intelligent, reasonable and impartial jurors may honestly and justly entertain after a careful examination and conscientious consideration of all the evidence,

We have stated to you that the defendant contends that although he fired the pistol, yet that he fired it downward and not in the direction of the officer, and that therefore he fired it in a manner and direction, and under circumstances in which he could not possibly have aimed it at, or struck or injured the prosecuting witness.   We will further say to you that, if you are satisfied that such is the fact, and that he did not aim at the officer, or fire it in a manner in which the officer could naturally and probably have been injured, and, therefore, that he could not have intended to shoot him or to murder him, then you may and should find him not guilty of the assault with intent to murder the prosecuting witness, and also not guilty of the assault merely, unless you should find from other facts proven in the case, if there are any, that he is guilty either in manner and form as he stands indicted, or of a simple assault only.

Verdict,  guilty  of  assault.