HENRY HALL, PLAINTIFF IN ERROR, vs. THE STATE.

1. An assault with intent to kill is not an offence known to the common law, but by statute of this State is made a *misdemeanor*.

2. There is a difference between an assault with intent to kill and an assault with intent to murder. An assault with intent to kill may exist where the party intends only such killing as amounts to manslaughter.

3 Whether a person indicted for an assault with intent to kill, had such intent at the time of the alleged assault, is a question of fact for the jury to decide, and in deciding that question the jury ought to act upon those presumptions which are recognized by the law so far as they are applicable, and the intent, like malice, may be either expressed, or implied and presumed where facts authorizing the presumption are proven.

4. The charge of the Court should be confined to matters in issue. The Court is not bound to instruct the jury, at the defendant's request, 'that if H. had killed W., and the homicide would have been manslaughter and not murder, that they ought not to find him guilty of the assault with intent to kill."

This case was decided at Marianna.

Writ of Error to Santa Rosa Circuit Court.

For a statement of the facts, reference is made to the opinion of the Court.

*C. W. Jones* for plaintiff in error.

*W. D. Barnes*, for Attorney General, for the State.

FORWARD, J., delivered the opinion of the Court.

Henry Hall was indicted under the statute of February 10th, 1832, for an assault on Jesse Williams, with intent to kill him. The bill of exceptions states the following facts: "The State introduced a witness, who, being sworn, testified that some time in January, A. D. 1859, one Jesse Williams was at his house in said county; that shortly after the arrival of said Williams there the defendant also came to his house; that shortly after these two parties had met, the defendant commenced a conversation with Williams, in the course of which the defendant accused two parties with stealing his money, but did not name them; that Williams became very angry with the prisoner, pulled off his coat and shook his fist at him, at the same time telling the prisoner that if he would go out of doors, he, Williams, could whip him; that the prisoner, after Williams had told him several times that he could whip him, finally observed to Williams that if nothing but a fight would satisfy him that he would accommodate him, and followed Williams out of doors; that, shortly after the parties went out, the witness heard a report from a pistol, and, on seeing Williams, discovered that he had been shot in the left arm, a little below the elbow, and that he, Hall, had fled.

A witness was then introduced on the part of the prisoner, who testified that he was present when the difficulty between Hall and Williams occurred; that Hall was at the house referred to by the other witness before Williams arrived; that Williams, on his first entering the house, began to threaten and abuse Hall, and dared him to come out of doors with his coat off; that Hall, after some hesitation, went out, and that shortly afterwards the witness heard a

pistol go off, and saw the prisoner run away; that Williams was shot in the arm, but did not fall.

After argument, the prisoner's counsel asked the Court to charge the jury, "that if Hall had killed Williams, and that the homicide would have been manslaughter and not murder, that they ought not to find him guilty of the assault with intent to kill;" which charge the Court refused to give.

The Judge, on the contrary, charged the jury, "that it was not necessary that the shooting, if it had proved fatal, would have been murder in order to convict the prisoner of an assault with intent to kill, but that if from all the circumstances in evidence they were satisfied that if Williams had died from the pistol wound inflicted by Hall, although the killing would have been manslaughter, that they ought to find the prisoner guilty."

The defendant was found guilty, and his punishment assessed to three months imprisonment.

The errors assigned are, that the Judge erred in refusing to give the instructions asked by defendant's counsel, and in charging them as he did.

The statute under which this indictment is found is in the following words:

"Any person convicted of false imprisonment, mayhem, an assault and battery or an assault with intent to kill, shall be punished by a fine not exceeding one thousand dollars, or imprisonment not exceeding six months, at the discretion of the jury; and any person convicted of a bare assault shall be punished by a fine not exceeding one hundred dollars, at the discretion of the jury."—Thomp. Dig., 490.

And the Legislature of the State have made the following general provisions for the trial and punishment of crimes, viz: That "the common law of England in relation to crimes and misdemeanors, except so far as the same relates to the modes and degrees of punishment, shall be and the

same is hereby adopted and declared to be in full force in this State."

"All offences known to the common law, the punishment whereof is not provided for by this act, shall be punished by a fine not exceeding five hundred dollars, or imprisonment not exceeding twelve months, at the discretion of the jury." Thomp. Dig., 489.

Provision is also made by statute for the punishment of murder, manslaughter and involuntary manslaughter, but no degrees of homicide are declared. All these were enacted at the same time and embraced in one act.

To determine whether the Court erred in refusing to give the charge to the jury asked by prisoner's counsel and instead thereof giving to them the charge as appears by the record, it becomes important to enquire whether there is any difference known to the law between assault with intent to kill and assault with intent to murder—whether by intent to kill is meant an intent to murder, and whether an intent to kill may exist where the party making the assault intended only such killing as amounts to manslaughter? By refering to our legislation, it will be seen that in the same act under which this indictment is found the Legislature provided for the punishment of "*all offences known to the common law.*" By the common law, all *attempts to commit a felony* were offences. Thus, as manslaughter was a felony, an attempt to commit it was an offence known to the common law. Murder, being a felony, an attempt to commit it was an offence known to the common law. But by no statute of Florida is assault with intent to kill, assault with intent to murder, assault with intent to commit manslaughter or any attempt to commit felony, made a felony. On the contrary, they are misdemeanors.

At common law, an assault with intent to commit murder was not a felony, but was a great misdemeanor. So an as-

sault with intent to commit manslaughter was a misdemeanor.

We have been unable to find that any such offence as an "assault with intent to kill" was known to the common law. The nearest we have come to it is by an expression in Blackstone heretofore quoted, while we do find the offence of assault with intent to murder defined, and precedents for the indictment; in which indictment it is averred that the person indicted committed the assault *feloniously, wilfully* and of his *malice aforethought*, with intent to kill and murder—the expression "to kill and murder" being made necessary to conform to the English statute. See Rex vs. Wood, Car. & Payne, 381, note, vol. 19 Eng. Com. Law Reports.

It is contended by the counsel for defendant, with considerable force and supported by high authority, that this. word "kill" in our statute is synonymous with "murder."

In Blackstone, 4 vol., page 196, the commentator, in. speaking of the offence of murder, says:

"Next, it happens where a person of such sound discretion *unlawfully killeth*. The unlawfulness arises from the killing without warrant or excuse, and there must also be an actual killing to constitute murder, for a bare *assault with intent to kill* is only a great misdemeanor, though formerly it was held to be murder."

Reference is made to 1 Hale's Pleas of the Crown, page 426. It is there asserted "that *an assault with intent to kill* was formerly held to be murder." By putting the remarks of these writers together, there is reason for the inference that "kill" and "murder" meant the same thing. This inference, however, is met by reference to Hawkins' Pleas of the Crown, page 114, sec. 21, where it will be seen that the declaring of such an assault to be murder arose from a misconstruction of the Statute of Marlebridge, c. 26.

In Bradley vs. The State of Mississippi, 10 Smedes &

Marshall, page 619, Mr. Justice Hatcher, in delivering the opinion of the Court, says: "The indictment charges the accused with an assault and battery with a deadly weapon upon a certain slave *with intent to commit manslaughter.* This indictment can be construed only to be an indictment for an aggravated assault. It is not an indictment for an assault with intent to kill, by which is understood, as has been held, an intent to *murder.*"

It is to be regretted that the Court did not embody authorities in its opinion, and did not point the reader to the case or cases in which intent to kill is "*understood* and *has been held an intent to murder.*" The contrary doctrine is held in at least five of the States in the Union and in England.—See People vs. Shaw, 1 Parker, 327; State vs. Nichols, 8 Conn., 496; Nancy vs. State, 6 Alabama, 483; Moore vs. State, 18 Ala., 532; Ogletree vs. State, 28, Ala., 693; 4 Missouri, 618; Ohio Rep., 18, page 379; Regina vs. Bourbon, 2 Carrington & Kirwan, 367, found in 61 vol. English Common Law Reports.

In this last case, the first count of the indictment alleged an intent to murder, the second count an intent to disable, and the third an intent to do grievous bodily harm. Maule, J., (in summing up,) says: "If the prisoner had killed this man, it would have been murder whether he intended to kill him or not; but I think that there is hardly evidence here to support a charge of an intent to murder. A person cannot have an intent to murder, or an intent to do any other thing, without intending to commit murder or do that other thing. It would be a contradiction in terms if it were otherwise. You will therefore consider whether the prisoner had an intent to kill this man or only an attempt to disable him, or to do him some grievous bodily harm. If in this case death had ensued, there can be no doubt that the offence of the prisoner would have been murder; yet, I think it would

be too much to say that the prisoner intended to commit murder."

In the case in 4 Missouri, 618, the offence was described in the indictment as an assault with intent to kill. The Court held that an assault with intent to commit manslaughter is indictable; it is sufficiently described in the indictment as an assault with intent to kill.

The case of Ogletree vs. The State, 28 Ala., 700, was an indictment with intent to murder. The offence by the statute of the State is made felony. The Court say: "In consideration of the charge of the Court, it is important to bear in mind the nature and ingredients of the alleged offence. The defendant is indicted, not merely for what he has effected, but for what he intended to effect—not only for his act, but for the *intent* with which he did that act."

Mr. Bishop, in his Treatise on Criminal Law, sec. 514, says: "The charge against him is, that in consequence of a *partici lar intent*, reaching *beyond the act done*, he has incurred a guilt beyond what is deducible from the act wrongfully performed.".

Again, in section 515 of Bishop's Criminal Law, it is stated, that "on the other hand, where one is indicted for an assault with intent to murder, and the proof shows an assault with such *intent in fact*, it would seem that there may be a *conviction though the circumstances be such* that, if death had followed, the offence would not be in law murder."

The cases of Shepherd vs. The State, 18 Ohio, 379, Nancy vs. The State, 6 Ala., 483, are cited as sustaining this. The weight of authorities clearly establishes that there is a difference between an intent to kill and an intent to murder. Thus we think an intent to kill may exist where the party intends only such killing as amounts to manslaughter. By reference to our acts of the Legislature set forth above, it

will be seen that, by providing for the punishment of "*all offences known to the common law*," they had included all attempts to commit a felony, including assault with intent to murder, but being desirous that other intents to kill should be punished, they made assault with intent to kill, in cases where, if the party had carried out his intent, it would not have been murder, a misdemeanor, thus making an assault with intent to kill a statutory offence, and classed it with other assaults.

Whether he had that intent at the time of the alleged assault is a question of fact for the jury to decide, and in deciding that question "the jury ought to act upon those presumptions which are recognized by the law, so far as they are applicable, and their own judgment and experience as applied to all the circumstances in evidence." In ascertaining the intent, it may, like malice, be either express or implied and presumed where facts authorizing the presumption are proven.

It may be said that this construction of the act would make justifiable and excusable homicide, or any other killing, with or without malice, indictable, and therefore, in justifiable homicide, a party may be convicted for the *intent to kill* when he could not be convicted for the killing. The answer to that is, the justification or excuse will be a good defence on the trial.

Under the view of the law entertained by this Court and herein expressed, it follows that we do not think the Judge in the Court below erred in refusing the instructions asked by defendant's counsel, nor in the charge given by the Judge to the jury. We are aware of the fact that it has been the practice in this State to charge the jury on trials for an assault with intent to kill, that, to convict the prisoner of that offence, they must find, under the evidence, that the assault was committed with malice and under such circumstances that, had death ensued, such homicide would have

been murder. It is probable the Solicitors and Courts have been led into this error by following the law of evidence as laid down in Archibold's Criminal Pleadings, page 432, under "indictment to kill and murder." By reference to the form of the indictment therein given, it will be seen that it is alleged the offence was *feloniously, wilfully* and of *his malice aforethought* committed. Also as laid down in 1 Hawkins' Pleas of the Crown, page 225, under "an indictment for shooting at another." This offence is made felony under the statute of 9 Geo., 1 C., 22, known as the "Black Act." The expressions of the statute are, "that if any person shall wilfully and maliciously shoot," &c. Here the allegations in the indictment, and the express words of the act, constitute *malice* the essential part of the offence. Thus it was necessary to prove the assault committed under such circumstances that if death had ensued such homicide would have been murder. But, it will be seen, by reference to a note found in Hawkins' Pleas of the Crown, page 225, that it was held by the Court in England that a shooting in the intemperance of passion, upon such a provocation as would in law reduce the crime of homicide to manslaughter, in which no malice can exist, was not within the meaning of the act.

*Per curiam.*—The judgment of the Court below is affirmed and this cause remanded back to the Circuit Court holden in and for the county of Santa Rosa, and that Court directed to cause to be inflicted the punishment assessed by the jury.