## STATE v. MINOUSIS.

No. 4081.   Decided July 21, 1924.   Rehearing denied September 3,
1924.   (228 Pac. 574.)

1.  CRIMINAL LAW—CONVICTION NOT DISTURBED, IF SUBSTANTIAL
    EVIDENCE TO SUPPORT CHARGE WARRANTING SUBMISSION TO JURY.
    Appellate court is required to uphold conviction, if there is
    substantial evidence to support charge in information, and
    which would warrant trial court in submitting case to jury.

2.  HOMICIDE—SPECIFIC INTENT TO TAKE LIFE OF PERSON ASSAULTED
    NECESSARY TO SUPPORT CHARGE OF ASSAULT TO COMMIT MURDER.
    In order to convict one charged with assault with intent to
    commit murder, there must exist in mind of accused specific
    intent to take life of person assaulted.[1]

3.  HOMICIDE—SPECIFIC INTENT TO TAKE LIFE OF PERSON ASSAULTED
    MAY BE PROVED BY CIRCUMSTANTIAL AS WELL AS DIRECT EVIDENCE.
    Specific intent to take life of person assaulted may be proved
    by circumstantial as well as direct evidence, and may be in-
    ferred by acts and conduct of accused, nature of weapon, and
    manner of its use, together with all other circumstances in
    the case.

4.  HOMICIDE—WHETHER SPECIFIC INTENT TO TAKE LIFE OF PERSON
    ASSAULTED EXISTED IN MIND OF ACCUSED HELD FOR JURY.   In
    prosecution for assault with intent to murder, under Comp.
    Laws 1917, § 8046, whether or not specific intent existed in
    mind of accused to kill person assaulted was question of fact,
    to be submitted and determined by jury from all the evidence
    and inferences to be drawn therefrom, and was not a matter of
    legal presumption.[2]

5.  HOMICIDE—EVIDENCE HELD TO WARRANT JURY IN FINDING SPE-
    CIFIC INTENT TO KILL PERSON ASSAULTED.   In prosecution for
    assault with intent to commit murder, under Comp. Laws 1917,
    § 8046, evidence which showed, among other things, that de-
    fendant shot at person assaulted to hit him, and did hit him
    when he was but three or four yards away, *held* to warrant
    jury in finding specific intent by defendant to kill person as-
    saulted.

[1] *People* v. *Robinson*, 6 Utah, 101, 21 Pac. 403.
[2] *People* v. *Robinson*, 6 Utah, 101, 21 Pac. 403.
See 16 C. J. § 1564; 17 C. J. § 3593; 30 C. J. §§ 164, 165, 536, 572.

6. CRIMINAL LAW—JURY AT LIBERTY TO BELIEVE ONE WITNESS AGAINST MANY. Jury is at liberty to believe one witness as against many, and to decide in conformity with declarations which produce conviction in its mind, rather than follow the many, if it so desires.

Appeal from District Court, Seventh District, Carbon County; *F. E. Woods,* Judge.

George M. Minousis was convicted of assault with intent to commit murder, and he appeals.

AFFIRMED.

*Marioneaux, King & Schulder,* of Salt Lake City, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal. Farr,* Asst. Atty. Gen., for the State.

GIDEON, P.

The defendant, George M. Minousis, the appellant here, was charged by the information filed in the district court of Carbon county with the crime of assault with intent to commit murder upon the person of one Dorrity. The prosecution was had under the provisions of section 8046, Comp. Laws Utah 1917, which section reads:

"Every person who assaults another with intent to commit murder is punishable by imprisonment in the state prison not less than one nor more than twenty years."

The jury found the defendant guilty. The judgment followed in the terms prescribed by statute. The defendant appeals from the judgment.

The appellant complains of certain alleged errors committed by the court in the course of the trial. His principal complaint is that the evidence is insufficient to justify the verdict, and that there is no evidence whatever in the record to support the charge in the information.

In considering the claims of the appellant, it is necessary to briefly state the evidence as the record discloses it, giving prominence to that offered by the prosecution, for the reason that we have nothing to do with the matter of reconciling conflicts. We are required to uphold the judgment if it appears that there is substantial evidence to support the charge in the information, and which would warrant the trial court in submitting the case to the jury.

The affray leading up to the assault occurred in the town of Scofield, Carbon county, Utah, and was precipitated primarily by reason of the fact that a strike was then in progress throughout the coal fields of the state. It appears that the strike was in progress during April, 1922, in Scofield and the coal mines in that immediate vicinity. On the 27th of April a number of men employed as guards by the coal companies, one of whom was the prosecuting witness Dorrity, received orders from one of the officers of the coal company at Winterquarters to proced to Scofield to meet a train due to arrive there in the afternoon of that day, and upon which it was expected there would be several men whom the mine guards were to escort to Winterquarters. It further appears that four guards, namely, Dorrity, Waller, Ruff, and Parker, left Winterquarters on the afternoon in question for Scofield for the purpose indicated. Two of them rode in what was designated as a light covered rig. The prosecuting witness and one other man rode horseback. Upon their arrival at Scofield, after some little delay, these men proceeded to the railroad station, and there met the train, and picked up two men who came in on the train. At the time of the train's arrival, it is undisputed that a considerable number of men, many of whom were strikers and strike sympathizers, had gathered about the station. The testimony shows that there were between 100 and 200 men present.

There appears to be some conflict in the testimony between the state's witnesses and that of the defendant's witnesses as to what actually transpired at the station, but it is of no material importance. The state's witnesses testified that the men at the station assumed a belligerent attitude,

and addressed uncomplimentary remarks to the mine guards, and especially to the prosecuting witness. After the arrival of the train, the two men who came in were taken into the light-topped rig and started for Winterquarters. This rig was followed by the two mine guards, Parker and Dorrity, on horseback. They proceeded up the road from the station, and were followed by a considerable number of strikers and men who had been at the railroad station. These men, or at least some of them, continued to pay their respects to the mine guards in no uncertain terms, and accompanied the same, according to the state's evidence, by throwing missiles of various kinds. It is claimed that the defendant, Minousis, who was over on one side of the road, picked up some sort of missile and threw it at Dorrity, striking him in the side. Thereupon Dorrity rode back and over to the defendant, addressing some remark to him, and as he did so, the defendant shot him, the bullet taking effect in the right leg. Dorrity's horse being somewhat fractious and excitable then became unmanageable, and ran a short distance before Dorrity could get the animal under control. As soon as he did, he turned about, started back, and, being armed with two revolvers, he immediatly drew a gun and commenced shooting at the defendant, but failed to hit him. The defendant denies that he threw anything at Dorrity, and claims he shot in self-defense. He does, however, admit shooting Dorrity and emptying his gun at him, after which he sought shelter. About this time there was considerable shooting going on, and Dorrity, after exhausting his ammunition, continued on up the road, and there joined the other guards, and they continued on their way.

From the record it appears that for a short time a miniature war was in progress, participated in with some zest by both the strikers and the mine guards, nearly all of the latter being armed. Luckily for all concerned, the marksmanship was exceedingly poor. While the above is a brief statement of the state's evidence in the case, nevertheless it will suffice for the purpose of this opinion.

We shall now proceed to a consideration of the principal

errors urged by the appellant in his brief and argument, to wit: That the evidence is insufficient to warrant a verdict of guilty against him, and that the court erred in denying his motion for a new trial. To sustain these propositions, it is earnestly insisted by the appellant that the gravamen of the offense with which the appellant was charged is the intent with which it was committed, and that the state failed to prove this specific intent, to wit, the intent to kill the prosecuting witness, Dorrity, and further that the evidence is insufficient to justify the verdict in that regard.

It is now well settled that, in order to convict one charged with assault with intent to commit murder, there must exist in the mind of the accused a specific intent **2** to take the life of he person assaulted. *People* v. *Robinson,* 6 Utah, 101, 21 Pac. 403; *People* v. *Mize,* 80 Cal. 42, 22 Pac. 80; *Young et al.* v. *State,* 68 Tex. Cr. R. 580, 151 S. W. 1046; *Gilbert* v. *State,* 90 Ga. 691, 16 S. E. 652; *Lovett* v. *State,* 9 Ga. App. 232, 70 S. E. 989; *Patterson* v. *State,* 85 Ga. 131, 11 S. E. 620, 21 Am. St. Rep. 152.

It is equally well settled that such specific intent may be proved by circumstantial, as well as direct, evidence, and that it may be inferred from the acts and conduct of the accused, the nature of the weapon used by defendant and manner in which it was used, taken together with all the other circumstances in the case. 2 Bishop, New **3** Crim. Proc. § 1101; 3 Bishop, New Crim. Proc. § 661; Michie on Homicide, p. 1343, § 257; Abb. Trial Brief Crim. Cas. 677, 678; *Lovett* v. *State,* 9 Ga. App. 232, 70 S. E. 989; *State* v. *Ruck,* 194 Mo. 416, 92 S. W. 706, 5 Ann. Cas. 976; *People* v. *Scott,* 6 Mich. 287; *Chrisman* v. *State,* 54 Ark. 283, 15 S. W. 889, 26 Am. St. Rep. 44; *People* v. *Owens,* 3 Cal. App. 750, 86 Pac. 980; *State* v. *Mills,* 6 Pennewill, 497, 69 Atl. 841; *Crosby* v. *People,* 137 Ill. 325, 27 N. E. 49; *People* v. *Landman,* 103 Cal. 577, 37 Pac. 518.

In discussing the question of intent in a case somewhat similar to the one at bar, that eminent jurist, Mr. Justice Campbell, of the Supreme Court of Michigan, in the course of his opinion in *People* v. *Scott,* supra, said:

"The intent to kill must undoubtedly be established, as an inference of fact, to the satisfaction of the jury; but they may draw that inference, as they draw all other inferences, from any fact in evidence which, to their minds fairly proves its existence. Intentions can only be proved by acts, as juries cannot look into the breast of the criminal."

In the case of *State* v. *Ruck,* supra, the Supreme Court of Missouri laid down the same rule as announced in the *Scott* Case. In the course of its opinion the court said:

"It seems to be argued also, inferentially, that, because the defendant did not say anything before he struck Rutherford on the side of the head with a beer bottle, the intent was not established. We are wholly unable to accede to the contention of the learned counsel for the defendant. Of course, it was necessary to satisfy the jury, under the information, that the assault was committed with intent to kill, and the jury by their verdict have distinctly found that such was the intent of the defendant. On this appeal it is not the province of this court to disturb the verdict and finding of the jury, unless there was no substantial evidence upon which the finding could be based. In the consideration of *whether there was sufficient evidence to justify the jury in its conclusion, not only the nature of the weapon but the physical strength of the person wielding it, the fact that the prosecuting witness was entirely off of his guard, and not anticipating an assault, the nature and character of the blow, and the fact that four men were united in the assault on one man, and the vicious motive inspiring the assault, must all be taken into account."* (Italics ours.)

The Supreme Court of Illinois, in the case of *Crosby* v. *People,* supra, laid down the following rule and held (quoting from the syllabus):

"The intent with which an act is done is a question of fact, either to be shown by the declarations of the party, or to be inferred from the character, manner and circumstances of the assault. While the intent cannot be implied as a matter of law, it may be inferred from the use of a weapon or instrument calculated to produce death, or from an act of violence from which, ordinarily, in the usual course of things, death or great bodily harm may result.

"It does not follow because the wounds and injuries received by a person assaulted and beaten are not such as would be usually and probably fatal within themselves, that the assault could not have been or was not made in a manner likely to produce death, or was not made with the intent to kill or murder. The manner of an assault should not be confounded with its results."

As to whether or not the specific intent existed in the mind

of the accused is a question of fact to be submitted to and determined by the jury from all the evidence in the case and the inferences to be drawn therefrom, and          4 is not a matter of legal presumption. See authorities cited above; also 30 C. J. p. 324, § 572; Michie on Homicide, § 257; *People* v. *Robinson,* 6 Utah, 101, 21 Pac. 403; *Patterson* v. *State,* 85 Ga. 131, 11 S. E. 620, 21 Am. St. Rep. 152; *Hall* v. *State,* 9 Fla. 203, 76 Am. Dec. 617; *People* v. *Mize,* 80 Cal. 41, 22 Pac. 80; *People* v. *Fine,* 53 Cal. 263.

The foregoing rule is well stated by the Georgia court in the case of *Patterson* v. *State,* supra, wherein it said:

"At the common-law, in all cases where an assault with intent to do great bodily harm, or to kill, or to murder, is charged, the intent with which the assault was made is always left by the English courts to the jury to determine. See the cases cited above. The rule may be said to be not only general, but universal."

See, also, Michie on Homicide, § 257; *Steffy* v. *People,* 130 Ill. 98, 22 N. E. 861.

While it is true there is sharp conflict in the testimony between the state and defendant, there is, in our opinion, some evidence and circumstances from which the jury might draw certain inferences as to specific intent of the defendant. There is some evidence from defendant's own witnesses to the effect that defendant was at the station at the time the guards were there. On direct examination, defendant's witness Miller testified that he saw the defendant at the station and within 50 feet of the platform. This same witness on cross-examination testified that defendant was around the depot with the rest of the crowd of men when the train came in, and that he also saw defendant walking up the road with the rest of the men. There is evidence in the record tending to show that a number of men were following the mine guards up the road, throwing missiles at them, and using abusive language. It is also shown that Dorrity had passed the defendant on the road, and had gone about 50 feet before he turned and came back; that the defendant threw and hit Dorrity with some sort of missile. There is also evidence in the record to the effect that Dorrity did not draw his gun

until he had been shot, and after he had brought his horse under control, and had turned back toward defendant.

Accepting defendant's own version of the fray, admittedly he shot at Dorrity to hit him, and did hit him, using a six-shooter, which he emptied at him, and this, too, when Dorrity was still between three and four yards away. There are numerous other circumstances surrounding the case from which a jury might draw certain inferences tending to show a specific intent, and this court is not prepared to say as a matter of law that the jury was not justified in so doing.

The defendant admits shooting Dorrity, but claims he did it in self-defense. If the jury did not believe defendant shot in defense of his life, which it is evident it did not, then the contention that the jury was not justified in arriving at the conclusion reached, cannot prevail. Certainly the jury was the sole judge of the facts, the credibility of the witnesses and the weight to be given to their testimony. By their verdict they apparently elected to disbelieve the defense interposed by defendant. That was a matter strictly within their province, and we cannot say as matter of law that their final conclusion was wrong. As we have heretofore indicated, the evidence is conflicting, yet if, in the last analysis, the jury believed the evidence introduced by the state, it was ample to warrant its finding.

Some comment is made by counsel for appellant as to the few witnesses testifying for the prosecution and the number in behalf of defendant. The jury were at liberty to believe one witness against many, and to decide in conformity with declarations which produced conviction in its mind, rather than follow the many, if it so desired. *People* v. *Torterice* (Cal. App.) 225 Pac. 760.

The court instructed the jury that the jury was permitted, under the information, to find the defendant guilty of one of three crimes: (a) Assault with intent to commit murder; (b) assault with a deadly weapon with intent to do bodily harm; (c) simple assault. The court also enumerated in its instructions the several or different elements necessary to constitute either of these specific offenses. No exception was

taken to thèse instructions, nor any part of them. No motion was made by counsel for defendant to withdraw from the jury's consideration the crime of assault to commit murder. Apparently no contention was made, until motion for new trial was made, that the evidence was not sufficient to warrant a verdict of the jury finding defendant guilty of assault with intent to commit murder.

A number of errors have been assigned relating to the ruling of the trial court upon certain questions propounded by the district attorney to the state's witnesses on their redirect examination and in rebuttal. We have examined these assignments carefully and are satisfied that the trial judge, in view of the record, committed no prejudical error in overruling defendant's objections.

The record discloses that appellant was ably defended, and that the trial court fully and fairly instructed the jury upon the law of the case, including the issue of self-defense.

From what has been said heretofore, it necessarily follows that the judgment of the trial court must be, and it accordingly is, affirmed.

WEBER, C. J., and THURMAN, FRICK, and CHERRY, JJ., concur.