392 P.2d 486

The STATE of Utah, Plaintiff and Respondent,

v.

Donald Gene KAZDA, Defendant and Appellant.

No. 10046.

Supreme Court of Utah.

May 25, 1964.

Donald Gene Kazda, pro se.

A. Pratt Kesler, Atty. Gen., Ronald N. Boyce, Deputy Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Justice.

Donald Gene Kazda appeals from conviction of robbery and assault with intent to murder. We review the facts in the light favorable to the jury's verdict.

In February, 1962, Donald Kazda, his brother, Dennis, with a girl companion, Norma Barker, had driven from Salmon, Idaho, into Utah. They arrived at the town of Duchesne at about 7 p. m. on the evening of February 20th. Donald suggested that they drive up Indian Canyon about 10 miles east of Duchesne on the old Highway 40, to Bridgeland, where he knew that the grocery store and service station was run by an old couple, which would be a "good place to hold up." When they arrived there, Donald and Dennis pulled nylon stockings over their heads, and Donald carrying a shotgun, Dennis a pistol, entered the store, while

Norma waited and watched in the car. Shortly Norma saw a flash, heard a blast, and her two companions came running. Donald threw the shotgun in the back of the car, opened a billfold which he carried, stuffed the money into Norma's purse, and stated: "That isn't much money to shoot an old man for." As they drove back toward Duchesne, they threw the billfould, shotgun and stockings out of the car window. They were later apprehended and connected with this crime.

At a former trial the defendant was convicted, but upon appeal to this court, the conviction was reversed and remanded for a new trial. State v. Kazda, 14 Utah 2d 266, 382 P.2d 407. At the commencement of the instant trial, defendant's counsel moved for a change of venue on the claim that because of prejudice in the county the defendant could not have a fair trial therein. The motion was denied. The defendant then personally asked for a change of venue and objected to proceeding with the trial, representing to the court that he had mailed to this court petitions for a restraining order and for writs of certiorari, prohibition and mandamus. The trial court overruled the motions and proceeded with the trial.

The State's evidence consisted mainly of the testimony of Norma Barker, the self-confessed accessory to the crime; and the reading of the testimony of one Johnny Buck which had been given at the first trial, concerning statements made to him by Donald Kazda to the effect that the latter had shot an old man in Utah and thought he had killed him. Other evidence was introduced showing that the elderly store owner, Eldon Brady, had been shot in the arm and chest by a shotgun. A shotgun, two nylon stockings and Eldon Brady's billfold, all of which had been found by the sheriff along the road in Indian Canyon, were also presented in evidence.

Defendant's brother, Dennis, who had pled guilty and was serving time, testified on Donald's behalf that it was he and not Donald who had shot Eldon Brady; and that Donald had been drunk and asleep in the back seat of the car during the episode. It is, of course, apparent that the jury believed the State's evidence and did not credit this rather obvious, even if somewhat gallant, effort of Dennis to protect his brother.

The defendant, with some admitted help from a fellow inmate, has done a rather ingenious job of raising points in attack upon his conviction, which are:

A. Proceeding to trial while his petitions were pending in the Supreme Court.

B. Permitting the reading of the testimony of Johnny Buck instead of having him personally present.

C. Insufficient corroboration of the accomplice, Norma Barker.

D. Failure to prove intent to commit the specific crimes charged.

E. Placing defendant's character in issue where he had not taken the stand nor offered any evidence as to his character.

■■ A. Whether a change of venue should be granted rests largely within the discretion of the trial court.[1] There is no indication that there was any abuse here. As to proceeding prior to the Supreme Court's action on defendant's requests for the various writs mentioned above, the trial court likewise was within its prerogative. The mailing of the petitions to this court did not cause the district court to lose jurisdiction, and it would have been improper to proceed only if this court had assumed jurisdiction and issued one of the writs in question, at least on a temporary basis, which was not done. (We here observe that the petitions stated no meritorious ground for granting the relief sought.) It seems plainly apparent to us, as it undoubtedly was to the trial court, that the defendant, a man of some experience in criminal matters, was simply attempting to indulge in tactics of delay and obstruction. There is nothing in this case to suggest that the court did not properly safeguard the de-

fendant's rights in going forward with the trial.

■ B. The testimony of Johnny Buck was properly allowed to be read at this second trial. At that time he was incarcerated in the Nebraska State Prison. Sec. 77–44–3, U.C.A. 1953 provides that whenever the testimony of any witness in any criminal case shall be reported, and " * * * thereafter such witness shall die or be beyond the jurisdiction of the court * * *, either party * * * may read in evidence the testimony of such witness * * * in any subsequent trial * * *." Where the witness had testified at the prior trial, and had been subjected to cross-examination, proceeding under this statute did not offend against the constitutional guarantee of an accused being confronted with the witnesses against him (Utah Constitution, Art. I, § 12). A witness outside of the state is "beyond the jurisdiction of the court." This is true even though we have the uniform Extradition of Witnesses Act, (Sec. 77–45–13, U.C.A. 1953) which is permissive and by means of which the attendance of a witness *might* be obtained.[2]

C. The disposition of Point B above approving the admission of the testimony of Johnny Buck removes the foundation from under defendant's contention that there is

---

1. See State v. Burris, 15 Utah 2d 109, 388 P.2d 232; Chamblee v. Stocks, 9 Utah 2d 342, 344 P.2d 980; Winters v. Turner, 74 Utah 222, 278 P. 816.

2. See State v. Leggroan, 15 Utah 2d 153, 389 P.2d 142.

insufficient corroboration of the testimony of the accomplice Norma Barker; and renders it unnecessary to consider whether the other evidence in the case might alone be sufficient corroboration.[3]

D. The argument that the State did not prove the defendant's specific intent to commit the crimes charged ignores two well settled principles. The first is that the jury can find not only the facts shown directly by the evidence, but also such additional facts as may reasonably be inferred therefrom. Thus, the intent to commit the crime of robbery or of assault with intent to commit murder may be found from proof of facts from which it reasonably could be believed that such was the defendant's intent.[4] The second is that one who aids, abets or encourages in the commission of a crime is guilty as a principal. (Sec. 77–21–39, U.C.A. 1953.) Thus, if both of the brothers participated, it matters not which actually did the shooting. Reflection upon the evidence recited above, and without repeating it, will indicate plainly that it is sufficient to justify a finding of the required intent.

E. The defendant's argument that his character was placed in issue is based upon the statement of the prosecuting attorney in arguing to the jury:

"Mr. Ivins: We have a man charged here with the most cruel and heinous type of an offense, for which he has shown no compassion, for which he has not shown any sign of regret."

The postulate that this puts the defendant's character in issue is not tenable. It does so no more than would be true of any defendant charged with a serious crime and against whom inculpatory evidence was adduced. The statement appears to be the prosecutor's appraisal of the crime and the type of man who perpetrated it as the evidence to him demonstrated. It was the jury's prerogative to agree with or to reject such appraisal.

Having found no error prejudicial to the defendant to justify reversal, the conviction is affirmed.

HENRIOD, C. J., and McDONOUGH, CALLISTER, and WADE, JJ., concur.

---

3. See discussion of corroboration of accomplice in State v. Sinclair, 15 Utah 2d 162, 389 P.2d 465.

4. See State v. Minousis, 64 Utah 206, 228 P.2d 574.