**The STATE of Utah, Plaintiff and Appellant,**

v.

**Clyde MAESTAS, Defendant and Respondent.**·

No. 17751.

Supreme Court of Utah.

July 21, 1982.

Ted Cannon, James F. Housley, David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and appellant.

Ronald J. Yengich of O'Connell & Yengich, Salt Lake City, for defendant and respondent.

HALL, Chief Justice:

The state appeals from an order by the trial court dismissing a charge of attempted murder against defendant in spite of a jury verdict finding him guilty. The state seeks reinstatement of the jury verdict.

On February 20, 1980, defendant allegedly robbed a bank and attempted to escape in a black van. As defendant drove south on State Street at about 650 South, he passed Sergeant Cecil Throckmorton of the Salt Lake City Police Department, who had stationed his car on the island in the center of the street and was standing beside the car awaiting defendant's approach. As defendant's van passed him, Sergeant Throckmorton fired a shot with his shotgun into the front of the van in an unsuccessful attempt to disable it. A few seconds later, as he drove away from Sergeant Throckmorton, defendant allegedly leaned out of the van window holding a 38-caliber revolver and fired it at the officer. Defendant drove several blocks further before crashing into a parked car, at which time he was apprehended by other police officers.

Defendant was charged with attempted first degree murder. At the conclusion of his trial, he filed a motion to dismiss, which the court denied. The jury then deliberated, returning a verdict of guilty. On the date set for defendant's sentencing, he renewed his motion to dismiss. The court

granted defendant's motion on the ground that "specific intent to kill could not properly be inferred from the evidence."

U.C.A., 1953, 76–5–202(1) describes the elements of first degree murder:

> Criminal homicide constitutes murder in the first degree if the actor *intentionally or knowingly* causes the death of another under any of the following circumstances:
>
>    *    *    *    *    *    *
>
> (d) The homicide was committed while the actor was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit, aggravated robbery, robbery, rape, forcible arson, aggravated burglary, burglary, aggravated kidnapping or kidnapping.
>
> (e) The homicide was committed for the purpose of avoiding or preventing an arrest by a peace officer acting under color of legal authority or for the purpose of effecting an escape from lawful custody. [Emphasis added.]

Thus, in order to find defendant guilty of attempted first degree murder, the jury was required to determine beyond a reasonable doubt that he "intentionally or knowingly" attempted to kill Sergeant Throckmorton under one of the circumstances listed above.

Defendant founds his argument for dismissal on the theory that the crime of attempted murder requires a stronger showing of intent than does the crime of murder itself. This theory derives from the common law rule that intent is a necessary element of every "attempt" crime even where the corresponding completed crime does not require intent as an element. As an example, defendant cites cases which discuss the common law rule that there is no crime of "attempted felony murder" because of the fact that felony murder requires no specific intent to kill, while an "attempt" crime must always consist of an intent to commit the corresponding completed crime accompanied by a substantial step toward realization of that crime.[1] Defendant then attempts to carry this rule one step further by asserting that the crime of attempted first degree murder with which he is charged requires a "specific intent" beyond that which would have been required in order to prove first degree murder itself if an actual death had occurred. Defendant does not argue that the evidence concerning intent would have failed to support a first degree murder conviction in the event of actual death, but rather that such evidence fell short of establishing the stronger "specific intent" allegedly required for the crime of attempted first degree murder.

■ Defendant's argument ignores the fact that common law definitions of criminal behavior have no application in this jurisdiction. The criminal code of this state explicitly abolishes all common law crimes[2] and our legislature has expressed its intention that its statutes be construed liberally even when they conflict with the common law.[3] U.C.A., 1953, 76–4–101(1) defines the crime of "attempt" as follows:

> For purposes of this part a person is guilty of an attempt to commit a crime if, acting *with the kind of culpability otherwise required for the commission of the offense,* he engages in conduct constituting a substantial step toward commission of the offense. [Emphasis added.]

The above statute makes it clear that regardless of any requirements which the common law may impose concerning "attempt" crimes, Utah law requires only "the kind of culpability otherwise required for the commission of the [completed] offense." Thus, there can be no difference between the intent required as an element of the crime of attempted first degree murder and that required for first degree murder itself.

**1.** *State v. Howell,* Utah, 649 P.2d 91 (1982); *State v. Norman,* Utah, 580 P.2d 237 (1978). See *People v. Viser,* 62 Ill.2d 568, 343 N.E.2d 903 (1975); *People v. Hassin,* 48 App.Div.2d 705, 368 N.Y.S.2d 253 (1975).

**2.** U.C.A., 1953, 76–1–105.

**3.** U.C.A., 1953, 68–3–2.

■ Even if the common law rule of attempt governed this Court's interpretation of the elements of that crime, that rule would not require the result urged by defendant here. That rule differentiates between the intent requirements for an attempted and a completed crime only where the completed crime may be committed without the intent to commit that crime in particular, as in the case of felony murder.[4] Where an intent to commit the particular crime committed is an element of the completed crime, the same intent requirement applies to the corresponding "attempt" crime, even at common law. Thus, Utah's first degree murder statute, which does contain such an intent requirement, would not fall within the rule cited by defendant even under common law principles.

■ Following the jury's finding that defendant had "intentionally or knowingly" attempted murder, the trial court had authority to enter a judgment contrary to that finding only if it found that no substantial evidence existed to support that verdict. In *State v. Penderville,*[5] this Court declared:

> It has been repeatedly held by this court that upon a motion to dismiss or to direct a verdict of not guilty for lack of evidence that *the trial court does not consider the weight of the evidence or credibility of the witnesses, but determines the naked legal proposition of law, whether there is any substantial evidence of the guilt of the accused, and all reasonable inferences are to be taken in favor of the state.* [Emphasis added.]

Thus, if any substantial evidence before the court supported the jury's guilty verdict, the court erred in granting defendant's motion to dismiss.[6]

The evidence tending to indicate that defendant intentionally fired his revolver at Sergeant Throckmorton consisted of a revolver, a photograph and testimony by three witnesses. Sergeant John Bernardo of the Salt Lake County Sheriff's Office testified that in investigating the scene of defendant's arrest he found a small revolver lying on the running board of the van next to the driver's seat. According to Sergeant Bernardo, the revolver contained four live rounds of ammunition and one fired casing and smelled of fresh nitrite, indicating that it had been fired recently. Sergeant Bernardo identified the revolver, the empty casing and a photograph showing the position of the revolver at the time of his discovering it, and the court received these items as evidence.

Sergeant Throckmorton, defendant's alleged target, testified that after passing him in the van, defendant continued to drive south for roughly one-half of a block and then veered somewhat to the left. At that moment, Sergeant Throckmorton reported hearing "a snap and a bang" which he identified as a gunshot. He testified that he could see the side of defendant's head and knew that defendant was looking back at him, although he did not see defendant's hand or a revolver. Sergeant Throckmorton testified that he had spent hundreds of hours on police firing ranges as a firearms instructor, that he was capable of determining the direction in which a projectile was traveling from its sound and that he heard the gunshot travel past him.

Salt Lake City police officer Dave Madsen, who possessed similar experience in working with firearms, testified that from a position of approximately 75–100 feet behind the van, he heard a shot come from the left front section of the van and simultaneously saw the van veer to the left. Madsen stated that by looking into defendant's rear-view mirror, he could see defendant's reflection and that he observed defendant bring his hand back into the van after the shot.

---

4. See U.C.A., 1953, 76–5–203(1)(d), which requires no intent to kill although it does require an intent to commit some other crime.

5. 2 Utah 2d 281, 272 P.2d 195 (1954).

6. See also *State v. Howell, supra,* note 1; *State v. Romero,* Utah, 554 P.2d 216 (1976); *State v. Randecker,* 79 Wash.2d 512, 487 P.2d 1295 (1971).

Finally, Salt Lake County Deputy Sheriff Jerry Townsend, who was pursuing the van southward at the time of the alleged shot, testified as follows:

[A]s soon as the black van passed the city officer I observed the driver stick his head out the window with a short barreled revolver and turn in the direction of the city officer and fire one shot.

\*   \*   \*   \*   \*   \*

... [T]he van passed the city officer, the driver then stuck his right arm out the window and turned to the city police officer's direction and fired one shot.

Q Using your chair to simulate the front seat of the van, will you demonstrate what you saw as the way that the person who fired the shot from the van fired the shot?

A This would be the driver's window (indicating). The occupant of the van reached out in a motion like this (indicating), back towards the position of the city officer, with his right arm out the window, fired one shot, then reentered the van....

Q Did you see the gun in the hand of the person in the van?

A Yes, I did.

Q Were you able to see in what direction that pistol was aimed?

A I thought it was being aimed at the city officer.

MR. YENGICH: Objection as to what he thought.

THE COURT: Sustained.

You need to respond to the question, which was were you able to see the direction in which the pistol was aimed.

THE WITNESS: Yes.

Q (By Mr. Houseley) And in what direction was the pistol aiming?

A Toward the city police officer.

Q Did you hear the pistol go off?

A Yes, sir.

Q Did you see any smoke or anything come from the pistol?

A Yes. I observed smoke coming from the pistol.

Q Did you see any jerk on the pistol, recoil?

A I don't recall seeing that right now.

The real and testimonial evidence summarized above constituted "substantial evidence" from which the jury could have concluded not only that defendant aimed and fired a revolver at Sergeant Throckmorton, but also that he did so "intentionally or knowingly." Because of the near impossibility of proving intent directly, Utah law clearly permits the inference of such intent from the actions of a defendant considered in light of surrounding circumstances. This Court has stated:

The argument that the state did not prove the defendant's specific intent to commit the crimes charged ignores two well-settled principles. The first is that the jury can find not only the facts shown directly by the evidence, but also such additional facts as may reasonably be inferred therefrom. Thus, the *intent* to commit the crime of robbery or of assault with intent to commit murder *may be found from proof of facts from which it reasonably could be believed that such was the defendant's intent.*[7]

It is ... well settled that such specific intent [to take the life of the person assaulted] may be proved by circumstantial, as well as direct, evidence, and that *it may be inferred from the acts and conduct of the accused, the nature of the weapon used by defendant and manner in which it was used, taken together with all the other circumstances in the case.*[8] [Emphasis added; citations omitted.]

Thus, in order to determine defendant's intent, the jury might have considered further evidence concerning his conduct and the circumstances surrounding the alleged gunshot, including testimony that he had just committed a bank robbery, that he had attempted to avoid capture by throwing money out of the van window and that he had demonstrated an indifference to the

7. *State v. Kazda,* 15 Utah 2d 313, 392 P.2d 486 (1964).

8. *State v. Minousis,* 64 Utah 206, 228 P. 574 (1924).

safety of others by driving erratically and on the wrong side of the traffic divider in his efforts to elude pursuers. We therefore hold that substantial evidence supported the jury in finding that the state had established both the act and the intent components of attempted first degree murder by defendant.

 The instructions to the jury correctly described the elements of attempted first degree murder and defined the terms "intentionally" and "knowingly" in precisely the language used by the Utah Criminal Code.[9] The instructions also correctly stated:

> You are instructed that in every crime or public offense there must be a union or joint operation of the act and intent. The intent or intention is manifested by the circumstances connected with the offense and the sound mind and discretion of the accused.
>
> All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is innocent until he is proven guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to be found not guilty.

Having received proper instruction concerning the act and intent requirements for the crime charged and the applicable standard of proof beyond a reasonable doubt, it lay within the province of the jury to decide the factual question of whether the state had met this standard of proof. Because substantial evidence supported the jury's guilty verdict, the trial court erred in interfering with the jury's exercise of its fact-finding role. We order that the verdict be reinstated.

Reversed.

STEWART, OAKS and HOWE, JJ., and DAVID B. DEE, District Judge, concur.

DURHAM, J., does not participate herein; DEE, District Judge, sat.

9. U.C.A., 1953, 76–2–103(1), (2).