**STATE of Utah, Plaintiff and Appellee,**

v.

**John D. HAWKINS, Defendant and Appellant.**

**No. 971398–CA.**

Court of Appeals of Utah.

Oct. 29, 1998.

Edward R. Montgomery and Richard A. Van Wagoner, Snow Christensen & Martineau, Salt Lake City, for Defendant and Appellant.

Jan Graham, Atty. Gen. and J. Frederic Voros Jr., Asst. Atty. Gen., Salt Lake City, for Plaintiff and Appellee.

Before BILLINGS, GREENWOOD, and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Defendant John D. Hawkins was charged by information with burglary, a third degree felony, in violation of Utah Code Ann. § 76-6-202 (1995), and with theft, a third degree felony, in violation of Utah Code Ann. § 76-6-404 (1995). The jury found him guilty of theft, a Class A misdemeanor, a lesser included offense of the charged third degree felony theft, and of burglary, a third degree felony. Defendant appeals his burglary conviction. We affirm.

## BACKGROUND [1]

■ In July 1995, defendant subleased shop space in an industrial park from Tim Markham, his first cousin once removed. Tim's sister, Gloria Markham, was the signatory on the actual rental agreement for two adjoining shops—Units 98 and 99—but it was through Tim Markham that defendant arranged to sublease Unit 98. The sublease arrangement was an oral, month-to-month agreement, the terms being "[y]ou pay and you stay; you don't and you go." Defendant was to pay $340 per month rent. Defendant did not pay rent for December 1995 or any time thereafter.

Units 98 and 99 were connected by an adjoining door. With the Markhams' permission, defendant worked in both shops and had access to tools and equipment in both. Unit 98 had an outside door and a roll-up overhead door that did not lock properly; however, defendant knew how to disable the substitute locking mechanism so he could gain access by rolling under the door. During the two to three months defendant subleased the shop, he worked on various cars and was known to work at strange hours; many times he was seen working through the night. Around the end of October, defendant "disappeared," leaving some tools, personal items, and a dragster in the two shops. Defendant paid partial rent to the manager of the industrial complex for the month of November, but Tim and Gloria Markham were not aware of this. Defendant was never served with a notice of eviction, but Tim Markham changed all the locks in November 1995, and rented the shop to another sublessee. After defendant disappeared in late October 1995, the Markhams repeatedly called defendant and requested he remove his property from the shops.

In the early morning hours of January 13, 1996, another tenant in the industrial park, Jim Severns, was in his unit at the complex. He heard cars and went to investigate. Severns saw "two cars parked there [in front of the Markhams' units], and the drivers were talking to each other." One of the cars left, and the other, driven by defendant, pulled up in front of Mr. Severns' unit. Defendant

---

1. "In reviewing a jury verdict, we view the evidence and all reasonable inferences drawn therefrom in a light most favorable to the verdict." State v. Hamilton, 827 P.2d 232, 233 (Utah 1992) (citing State v. Gardner, 789 P.2d 273, 285 (Utah 1989)). We recite the facts according to this standard.

asked Severns what he was doing there and Severns, who also had not seen defendant for several months, asked defendant the same question. Severns testified that during the conversation, defendant appeared nervous. Defendant stated he was looking for his dog. At that time, the dog ran around the corner and jumped into defendant's car; defendant then drove away. About ten minutes later, sometime around 4 a.m., defendant called Severns two times. The first time, defendant told Severns he had driven by the shop and had seen that the door was open. During the second call, defendant asked Severns to get defendant's belongings out of the units. Severns declined and told defendant he should come by the shop in the daytime to get his things. Severns then went to sleep.

Severns woke up at about 6:30 a.m., walked by Unit 98, and noticed the roll-up door had been kicked in. Severns immediately contacted the Markhams. Upon inspecting the units, Gloria and Tim Markham found that several items were missing. The majority of missing items belonged to defendant, but some of Tim Markham's tools and equipment were missing, as were some tools belonging to Tim's sub-lessee, Rick Pierce. Gloria called Jack Carlton, defendant's boss and business partner, to ask about the missing items. Carlton told her that a family member had pawned the missing items, and that he would get back in touch with her. When she heard nothing for several days, Gloria wrote a letter to defendant asking him to pick up his dragster and other items he had left at the shop and demanding payment for storage fees on the dragster. Several days later, someone broke into the units and removed the dragster. Approximately ten days after the initial burglary, Gloria reported the matter to the police. At trial, both Gloria and Tim testified defendant did not have their permission to be in either unit on January 13, 1996.

Gloria testified she suspected defendant had burglarized the shops because some of defendant's items that had been taken were in locations that only defendant knew about—e.g., his dragster brakes were stored in a closet on a shelf with cans in front of the brakes. Additionally, virtually worthless glass cabinet doors belonging to defendant, which were located "on the side of the dresser up against the wall," were taken. However, the thief did not take valuable items such as a T.V., a VCR, and guitars and amplifying equipment that did not belong to defendant. The Markhams found a garbage can had been loaded with numerous auto-body tools belonging to their new sub-tenant, but the bottom of the garbage can had given out, so any plan to take those items had apparently been abandoned by the thief. There were also dog pawprints all over the shop and its furniture. Witnesses testified they believed them to be the same size as those of defendant's dog. Tim testified that nearly everything missing from the units was defendant's, except defendant's 250 pound compressor was still there, and Tim assumed it had been too heavy for defendant to lift and carry away by himself.

When interviewed by police, defendant initially denied any involvement in the burglary. He claimed that Severns was lying about seeing him at the scene, and said "that wasn't me." Defendant later admitted to police that he did go into the unit on the evening of the burglary, but claimed he did not take anything. At trial, defendant admitted talking to Severns at the complex the night of the burglary, and admitted going into the unit and doing "what I had to do." Nevertheless, at trial, defendant repeatedly claimed that the police reports were inaccurate, that the officers were mistaken in what they wrote, and that several witnesses who had testified were liars.

The jury convicted defendant on both counts. Defendant appeals only the burglary conviction.

## ISSUES

On appeal, defendant argues that he was improperly convicted of burglary because he entered the Markhams' property with their permission. Defendant also claims the State offered insufficient evidence to prove he possessed the intent to commit burglary. We address these arguments in turn.

### I. Unlawful Entry or Remaining

■ Section 76–6–201 of the Utah Code states:

A person "enters or remains unlawfully" in or upon premises when the premises or any portion thereof at the time of the entry or remaining are not open to the public and when the actor is not *otherwise licensed or privileged to enter or remain* on the premises or such portion thereof.

Utah Code Ann. § 76–6–201(3) (1995) (emphasis added). In addition, "[a] person is guilty of burglary if he enters or remains unlawfully in a building or any portion of a building with intent to commit a felony or theft or commit an assault on any person." *Id.* § 76–6–202(1). Under these provisions, to sustain a conviction for burglary, the evidence must show the defendant was in the building unlawfully, without license or privilege, with the intent to commit theft. To be guilty of theft, however, a person must only "obtain[ ] or exercise[ ] unauthorized control over the property of another with a purpose to deprive him thereof." *Id.* § 76–6–404. Thus, if the State does not prove an unauthorized entry or remaining, a defendant may not be found guilty of burglary but nevertheless may be convicted of theft. *See, e.g., State v. Pitts,* 728 P.2d 113, 115–16 (Utah 1986) (per curiam).

Defendant argues the State failed to show that he entered or remained on the premises without license or privilege. Defendant claims the undisputed evidence shows that he received the Markhams' express and unrestricted permission to enter the property, and that this permission was not thereafter revoked. Defendant argues that this permission derived either from his lease, which was never terminated, or from the Markhams' ongoing requests that he remove his belongings from the units. Since his entry was authorized, he asserts, the jury could not properly have convicted him of burglary, but only of theft.

#### A. Leasehold Interest

Defendant first claims he had a valid lease agreement with the Markhams that was never terminated or revoked. Because the Markhams neither evicted him, told him he was no longer welcome, nor sought return of the key to Unit 98, defendant claims his authority to enter the units at any time was unrestricted and unlimited.

■ The determination of whether a leasehold exists is a question of law that we review for correctness. *See Keller v. Southwood N. Med. Pavilion,* 959 P.2d 102, 107 (Utah 1998).

■ A lease may be abandoned when a tenant "voluntarily relinquishes or vacates the leased premises with the intention to terminate contractual rights to ... possession and control of the premises. The requisite intent can be shown by words or conduct." 49 Am.Jur.2d *Landlord and Tenant* § 250 (1995). "Abandonment generally occurs when the lessee leaves the rented premises vacant with the clear intention not to pay rent or to be bound by the lease." *Id.* In addition, Utah Code Ann. § 78–36–12.3(3) (1996) states:

"Abandonment" is presumed [if] ... (a) The tenant has not notified the owner that he or she will be absent from the premises, and the tenant fails to pay rent within 15 days after the due date, and there is no reasonable evidence other than the presence of the tenant's personal property that the tenant is occupying the premises[.]

Here, defendant did not pay rent after November 1995, and he vacated the premises for over two months. Given this evidence, the jury had sufficient basis to find defendant had abandoned the lease.

#### B. Permission to Enter

Defendant also claims that because the Markhams repeatedly requested he return to the units and remove his belongings, he was given express authority to enter the units, and the Markhams never rescinded this grant of authority. Defendant argues that pursuant to the Markhams' repeated requests, he returned to the units and removed his belongings; thus, he claims, he was not a burglar, but was instead granted a license and privilege to enter.

■ Whether the Markhams authorized defendant to enter the units in January, and

whether defendant exceeded the scope of any such authority, are factual determinations properly within the province of the jury. *See State v. John,* 586 P.2d 410, 412 (Utah 1978) (stating jury may consider evidence and may "draw whatever inferences may fairly and reasonably be drawn therefrom in light of their own experience and judgment.").

 "[A] license in real property 'is the permission or authority to engage in a particular act or series of acts upon the land of another without possessing an interest therein,' and is 'subject to the management and control retained by the owner.'" *Keller,* 959 P.2d at 107 (quoting 25 Am.Jur.2d *Easements and Licenses* § 137 (1996) and 49 Am.Jur.2d *Landlord and Tenant* § 21 (1996)). Although the Markhams may have granted defendant some sort of permission or license to enter the premises, the jury was in the best position to decide the scope of the permission granted. The jury heard the Markhams testify that they expected defendant to retrieve his property when one of them was at the shop. The Markhams further testified that they did not give defendant permission to come in the middle of the night and kick in the door in order to enter. The record demonstrates there was ample evidence for the jury to have concluded that defendant's forceful manner and odd time of entry exceeded the scope of the permission granted to defendant by the Markhams. Notwithstanding defendant's odd work hours while he was a lessee, he had not been there in over two months, had not paid any rent, and knew from the parties' relationship that the Markhams were unlikely to be at the shop at 4 a.m.

A license allows occupation of a property only so far as it is necessary to do the licensed act, and no further. A license must be exercised *only in the manner and for the special purpose* for which consent was given; if exercised in any other manner, or if the permission given is exceeded, the licensee becomes a trespasser. A license cannot justify acts unless they are within its terms, and those terms will not be strained beyond a fair and reasonable interpretation.

25 Am.Jur.2d *Easements and Licenses* § 139 (1996) (emphasis added). Because there was evidence that defendant came in the middle of the night and kicked in the door—damaging the premises—the jury could properly have found that the scope of defendant's license was clearly exceeded, and that defendant was instead a trespasser. *See Ogden Livestock Shows, Inc. v. Rice,* 108 Utah 228, 159 P.2d 130, 136 (Utah 1945) (McDonough, J., concurring) ("If the defendants, as permittees ... went beyond the scope of this use [of the property], they should be held liable for all resulting damage ... [and] they are in effect trespassers.").

Although defendant's counsel presented persuasive argument on appeal as to how defendant's entry could have been construed as permissive, defendant failed to persuade the jury. Because "[w]e will not substitute our judgment for that of the jury," *State v. Hamilton,* 827 P.2d 232, 236 (Utah 1992), we defer to the jury on this issue.

### II. Intent

 Finally, defendant argues the evidence was insufficient to prove he had the requisite intent to burglarize the Markhams' units. "This Court will not lightly overturn a jury verdict." *State v. McClain,* 706 P.2d 603, 605 (Utah 1985). When the sufficiency of the evidence is challenged, our scrutiny of the evidence is limited:

"[W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted."

*Hamilton,* 827 P.2d at 236 (quoting *State v. Booker,* 709 P.2d 342, 345 (Utah 1985)).

 "[I]ntent to commit [a crime] may be found from proof of facts from which it reasonably could be believed that such was the defendant's intent.'" *McClain,* 706 P.2d at 605 (quoting *State v. Kazda,* 15 Utah 2d 313, 392 P.2d 486, 488 (Utah 1964)). Thus,

intent may be inferred "from conduct and attendant circumstances in the light of human behavior and experience." *State v. Brooks*, 631 P.2d 878, 881 (Utah 1981). The Utah Supreme Court has stated that "[b]urglarious intent" is "rarely susceptible of direct proof. It is usually inferred from circumstantial evidence: the manner of entry, the time of day, the character and contents of the building, the person's actions after entry, the totality of the surrounding circumstances, and the intruder's explanation." *State v. Porter*, 705 P.2d 1174, 1177 (Utah 1985) (citing 12A C.J.S. *Burglary* §§ 85 and 104; 13 Am.Jur.2d *Burglary* § 52); *see also Pitts*, 728 P.2d at 116 (holding mere unlawful entry into private premises may not alone support finding of intent; however, defendant's "subsequent statements and conduct, and other unrebutted evidence of the surrounding circumstances" may support reasonable inference defendant entered or remained with specific intent to commit theft); *State v. Sisneros*, 631 P.2d 856, 859 (Utah 1981); *State v. Brooks*, 631 P.2d 878, 881 (Utah 1981).

Although much of the evidence regarding defendant's entry and intent was circumstantial, it was "not so ambiguous as to be susceptible to the interpretation that defendant was not guilty of burglary but was guilty [only] of theft." *Pitts*, 728 P.2d at 116. Thus, even an innocent or authorized entry into the Markhams' shop "would not acquit defendant if he remained therein with the unlawful purpose of stealing [property]." *Id.; accord* Utah Code Ann. § 76–6–202 (1995).

The record reveals the following: defendant kicked in the Markhams' shop door at 4 a.m. when it was virtually certain they would not be there; although defendant had often stayed in the shop all night when working, it is quite a different matter to show up in the middle of the night to retrieve belongings; defendant acted nervous when he was discovered in the early morning hours near the Markhams' shops; although he later admitted entering the shop, defendant initially denied entering when questioned by police; defendant admitted he wanted to start his own auto-body shop, and the stolen items and those left behind in the broken garbage can that the burglar tried to take were "basically what one would need to be in the auto-body business"; his boss and business partner, Jack Carlton, stated afterward that he knew where the stolen items were and that a family member had pawned them; and valuable items for which defendant had no use were not taken in the burglary.

Moreover, defendant's time and manner of entry into the units were suspicious enough, even given defendant's history of late work hours, to support a reasonable inference of intent to commit burglary. Defendant's later unsatisfactory explanations, coupled with his testimony at trial, could have led the jury to find him not to be a credible witness. "[I]t is within the province of the jury to judge the credibility of the testimony [and] assign weight to the evidence." *State v. Blubaugh*, 904 P.2d 688, 694–95 (Utah Ct.App.1995), *cert. denied*, 913 P.2d 749 (Utah 1996); *see also John*, 586 P.2d at 412. Although much of the evidence in this case is circumstantial, when all the evidence linking defendant to the crime is considered, the circumstantial evidence here "is of such quality and quantity as to justify [the fact finder] in determining guilt beyond a reasonable doubt." *State v. Nickles*, 728 P.2d 123, 127 (Utah 1986); *accord State v. Span*, 819 P.2d 329, 332 (Utah 1991). Thus, the jury was justified in finding beyond a reasonable doubt that defendant possessed the requisite intent to burglarize the Markhams' units.

## CONCLUSION

We hold defendant did not possess a leasehold interest that entitled him to enter the Markhams' shop on the morning of January 13, 1996. While permission may have been granted for defendant to remove his personal belongings from the shop, the jury reasonably concluded defendant's actions exceeded the scope of any such permission. Finally, the evidence presented at trial was sufficient for a jury to find beyond a reasonable doubt that defendant intended to burglarize the Markhams' shops. The burglary conviction is affirmed.

BILLINGS and ORME, JJ., concur.