## The People v. Samuel Scott.

On an indictment for an assault with intent to commit the crime of murder, it is wholly immaterial whether the murder intended would, if consummated, have been murder of the first or of the second degree.

The statute has not altered the common law definition of murder, but, recognizing it, has simply divided it into classes, or degrees of enormity, for the purpose of apportioning the punishment. Wherever, therefore, an assault with intent to kill is committed, and the circumstances are such that, if death had ensued, the killing would have constituted murder at the common law, the offense of assault with intent to murder, under the statute, is complete.

The degrees of murder under the statute considered, per CAMPBELL J.

The language of a judge's charge to the jury must be construed with reference to the facts in evidence, upon which it is given.

Where the charge of the judge to which exception is taken was not strictly correct, but the Court can clearly see that the jury could not have been misled by it, to the injury of the party excepting, a new trial will not be granted for that error.

*Heard May 4th. Decided May 7th.*

On exceptions from the Recorder's Court of the city of Detroit.

The prisoner was tried at the December term of said court, on an information for assault with intent to murder one McDonald. Several witnesses were examined, as well for the Government as for the prisoner, whose testimony established the following facts:

The prisoner and McDonald are both sailors, and met for the first time on the dock, where their respective vessels were lying, on the night of the assault. They had both

been drinking, and the latter was very much intoxicated. The prisoner was visiting the captain of the schooner Swan, and while on board this vessel, and at about the hour of 9 o'clock P. M., McDonald came alongside on the dock, and, in a loud and threatening tone, dared the persons on board to come off and fight him, saying, among other things, with an oath, that he could whip any of them. The captain of the Swan and McDonald had some talk about fighting, but the captain finally refused to fight, when McDonald took up a board, three or four feet long, and three or four inches wide, and said it would be a good thing to knock his brains out with, attempting at the same time get on board the vessel. His friends now came up and took him on board his own schooner, a short distance off. McDonald's manner was such as to induce the captain to anticipate further trouble during the night, and at his request the prisoner remained on board. About 12 o'clock, McDonald came back to the Swan, and, in a wild and threatening manner, boarded her. So far as appeared by the evidence, he was unarmed at the time, but was warned by the captain not to come on board. The prisoner and the captain were forward of the main mast when McDonald came on the vessel. The prisoner had a double-barrel gun in his hand, with which he shot McDonald in the face. The ball entered the left cheek, cutting the tongue nearly off, and passed out on the right side. The only injury done was the holes in the cheeks and wound on the tongue. The cook of the vessel swore he was in the cabin below deck, and that the prisoner called to him to hand up the gun, which he did. The gun was loaded, and the cook so informed the prisoner when he gave it to him, telling him at the same time he had better let it alone. The captain also testified that, before the prisoner fired the gun, he advised him to put it away, and that the latter replied, "Mind your own business"; at the same time cocking both barrels. The prisoner, after cocking the gun, pointed it at

McDonald, and said to the captain, "Louis, give the word of command"; at the same instant firing. He was within a few feet of McDonald at this time. McDonald fell, and the witnesses supposed he was killed.

The testimony and argument of counsel being closed, the Recorder proceeded to charge the jury, and, after commenting on the evidence, proceeded as follows: "At the common law, all killing was either murder, manslaughter, or excusable or justifiable homicide; but the humanity of modern legislation has subdivided the first into murder in the first degree and murder in the second degree. This is the subdivision under our statute; and were you trying the prisoner for the crime of murder, it would be your duty to ascertain in your verdict of which, if either of these, the prisoner was guilty. The statute under which the prisoner is informed against, reads as follows: 'If any person shall assault another with intent to commit the crime of murder, every such offender shall be punished by imprisonment in the state prison for life, or any number of years.' My view of the proper construction of this section, and of the duty of a jury in finding a verdict under it, makes it necessary that I should briefly define what constitutes murder, in either of the degrees, under our statute.

"Murder in the first degree is where one reasonable being willfully, deliberately, and premeditatedly, kills another, in the peace of the state; murder in the second degree is the intentional, unlawful killing of any reasonable being by another, without deliberation and premeditation; manslaughter is where one person unintentionally, but unlawfully, kills another; justifiable or excusable homicide is where the killing is necessary for self-defense, or by accident, under circumstances furnishing a reasonable excuse.

"An intent to kill is a necessary ingredient in murder, either of the first or second degree, but is excluded from the crime of manslaughter.

"In order to convict the prisoner of an assault with

intent to murder, you must be satisfied, beyond a reasonable doubt, that, had death ensued, it would have been murder either of the first or second degree. If you find that the prisoner committed the assault willfully, deliberately, and premeditatedly, intending to take McDonald's life, then, had death ensued, it would have been murder in the first degree; if you find that the prisoner intended to kill McDonald unlawfully, but without deliberation and premeditation, then, had death ensued, it would have been murder in the second degree. Therefore, if you shall find, from the evidence, beyond any reasonable doubt, that had death ensued, it would have been murder either of the first or second degree, then it will be your duty to find the prisoner guilty as charged in the information; otherwise you must acquit of the main charge, but may bring him in guilty of an assault." To this charge, the counsel for the prisoner excepted.

They requested the Recorder to charge the jury that, in order to convict the prisoner of the crime charged in the information, they must find that, had death ensued, it would have been murder in the first degree; and if they do not so find, the prisoner must be acquitted.

The Recorder refused so to charge, and the counsel for the prisoner also excepted to this refusal.

The substance of all the evidence in the case was set forth in the bill of exceptions, and there was no controversy respecting it.

*Ross & McEntee*, for defendant:

Malice prepense or aforethought, either express or implied, is an essential element in the crime of murder under the statute, and should have had a place in the Recorder's definitions. One might rightfully shoot down the burglar or the assassin, and yet the act come within the definition given of murder in the first degree.

The intent to murder is not an ingredient of murder

of the second degree.—1 *Ashm.* 298; 2 *Ibid.* 231; *Whart,*
*L. of Hom.* 385; and see 5 *Mich.* 9; 18 *Ala.* 532.

*D. E. Harbaugh, Prosecuting Attorney for Wayne County,*
    for the People:

The jury might convict of an assault with intent to
murder, whether the crime, if consummated, would have been
murder of the first or of the second degree.—19 *Ohio,*
387; 3 *Fos.* 321; 5 *Yerg.* 340.

CAMPBELL J.:

The respondent, having been convicted of an assault with
intent to commit the crime of murder, alleged exceptions
before sentence, and these are certified up for our opinion
under the statute.

The first exception was taken to so much of the charge
of the Court as defines the various classes of homicide, and
instructs the jury what facts must exist to render the accused
guilty of the offense charged.

As abstract definitions, we are of opinion that the defini-
tions given are wanting in preciseness, and would not, in
many cases, be as accurate as they should be to guide a
jury. But it would be very unsafe, in practice, to construe
the language of a charge without reference to the facts upon
which it is given. In this case, the bill of exceptions sets
forth the whole facts; and in determining the legal pro-
priety of the charge, we must bear these in mind. If the
whole facts were not before us, it might perhaps be neces-
sary to look solely at the general correctness of the rules
laid down, as universal propositions.

The facts show that there was no evidence in any way
tending to prove that if death had ensued, the homicide
would have been either excusable or justifiable. Neither do
they tend to show that it would have come within the terms
of voluntary manslaughter, for there are none of the elements
in the case which would reduce an intentional killing to that

grade. Involuntary manslaughter was excluded, because the charge expressly informed the jury that an intention to take life was a necessary ingredient of the offense charged. The facts relating entirely to a case which, if death had ensued, would have ,constituted murder, there was no error in the charge given which could in any way prejudice the respondent, or mislead the jury to his damage, unless it was in so much of it as authorized a conviction where the intent was to commit murder in the second degree. This seems to have. been the real ground of the exceptions appearing of record, as taken to the charge given; and it was in reference to this that a specific charge was asked, the refusal of which is the ground of the second exception.

We are somewhat at a loss to perceive the exact point of the objection to the charge of the Recorder on this subject. He had already laid it down very distinctly that in order to constitute the offense there must be an express intent to destroy life. If we should hold that murder in the second degree is always an unintentional killing, the refusal to charge as requested could do no harm, because the instructions actually given would prevent a verdict without proof of the more aggravated offense. The jury could not, under the charge, convict of any unintentional offense. But the language of the statute is entirely too plain for controversy. Whenever a man assaults another, intending to commit murder, the crime is complete. The intention to take life under any circumstances which would not render the killing manslaughter or justifiable or excusable homicide, constitutes the offense under the statute. As the questions presented seem to be founded on a misapprehension of the views expressed by this Court in the case of *The People v. Potter*, 5 *Mich.* 6, we deem it proper to repeat the explanations given on that occasion, and to · define the different degrees of murder under our statute.

Murder at the common law, embraced all unlawful killing done with malice aforethought. Murder under our statute

embraces every offense which would have been murder at common law, and it embraces no other crime. But murder is not always attended with the same degree of wicked design, or, to speak more accurately, with the same degree of malice. It may be committed in cold blood, and with much calculation, and it may be committed on a sudden impulse of passion, where the intent is formed and executed in the heat of blood, without any sufficient provocation to extenuate the degree of the offense to manslaughter. In both of these instances, and in the intermediate cases where the design is of greater or less duration, there is the actual intent to take life. Other cases exist, where, in the attempt to commit some other offense which is *malum in se* and not merely *malum prohibitum*, human life is taken without an express design to take it, and yet the crime is held to be murder, because resulting from the same species of depravity or maliciousness which characterizes that offense when committed designedly.

The statute, recognizing the propriety of continuing to embrace within the same class all cases of malicious killing, has, nevertheless, divided these offenses into different grades for the purposes of punishment, visiting those which manifest deep malignity with the heaviest penalties known to our law, and punishing all the rest according to a sliding scale, reaching, in the discretion of the Court, from a very moderate imprisonment to nearly the same degree of severity prescribed for those convicted of murder in the first degree. Each grade of murder embraces some cases where there is a direct intent to take life, and each grade also embraces offenses where the direct intent was to commit some other crime. As the law names all of the offenses, an attempt to commit which renders the person who takes life guilty of murder in the first degree, no difficulty can arise in defining the degree of any murder committed, without the actual design either of taking life or of doing bodily harm to the person assailed.

Except in the cases expressly named in the statute, murder in the first degree requires the existence of a deliberate intention to take life; and any slaying in which a jury should find either the absence of deliberation, or that the intent was to commit another and a lesser injury, must be either murder in the second degree, or one of the lighter grades of homicide.   Accordingly, in the case of *Potter*, where the court below had held that the jury could convict of murder in the first degree upon any proof which would establish murder at common law, we reversed the decision, and held that murder in the first degree, except in the specified cases, could only be made out by proof of express malice, and a deliberate design against life itself.   We were not called upon in that case to go any further into definitions, and we accordingly abstained from so doing.

The common law having made no distinction in the offense or its punishment, it is not to be wondered at that text-writers should differ in their views of the exact boundaries between express and implied malice; and the terms are not such as would give a modern jury any very clear idea, without explanation.   We think the language of the statute itself, taken in connection with its context, affords to persons in our times a very fair means of judgment.   And the best modern writers have had the good sense to convey their ideas in such terms as are generally intelligible.

When, therefore, following the statute, we hold murder in the first degree to be that which is willful, deliberate, and premeditated, and all other murders to be murder in the second degree, we should be undertaking a task which, if possible, would be exceedingly dangerous to undertake, to enumerate what facts constitute deliberation, and what exclude it.   Practically, a jury could rarely find much difficulty in applying the test.   Where there is positive proof of previous threats, ill-will, or preparation, and all of such a nature as to lead naturally and clearly to a fatal crime, questions seldom arise.   It is where surrounding circum-

stances are not clearly proven, and where the offense has no established antecedents, that difficulties have arisen in defining it.

In all these cases the circumstances proven must be taken into the account, and the jury must, from the whole facts, determine the intent and the deliberation. Voluntary manslaughter often involves a direct intent to kill, but the law reduces the grade of the offense because, looking at the frailty of human nature, it considers great provocations sufficient to excite the passions beyond the control of reason. But provocations often arise which are of less intensity, and are not in law regarded as sufficient to reduce the crime to manslaughter. If it appears that murder is committed upon a heat of passion engendered entirely by such provocations, and suddenly conceived, such a murder can not properly be called deliberate. But whenever murder is intentionally committed without serious provocation, and under circumstances which do not reasonably account for such an excitement of passion as naturally deprives men of deliberation, common experience teaches us that such an act is wanton, and its perpetrator responsible for it, as in other cases of coldblooded crime. The time within which a wicked purpose is formed is immaterial, provided it is formed without disturbing excitement. The question of deliberation, when all the circumstances appear, is one of plain common sense, and an intelligent jury can seldom be at a loss to determine it. No sane man acts without some cause for his action; and it is not difficult, in most cases of murder, to determine whether the cause was a sudden heat or not. The Recorder, although not precisely accurate in confining all murder in the second degree to intentional homicide, presented very intelligibly the difference in intent between the two degrees.

As murder in the second degree, like voluntary manslaughter, does embrace some cases of intentional killing, he was entirely correct in refusing the instructions prayed for, which would confine the statutory assault with intent to

commit murder to the offense which involves a *deliberate intent*. The intent to kill must undoubtedly be established, as an inference of fact, to the satisfaction of the jury; but they may draw that inference, as they draw all other inferences, from any fact in evidence which, to their minds, fairly proves its existence. Intentions can only be proved by acts, as juries can not look into the breast of the criminal. And where any act is knowingly committed which naturally and usually leads to certain consequences, a jury certainly has the right, in the exercise of ordinary sagacity, to draw the inference that such results are intended.

There is no error in the proceedings, and a new trial is denied. Let it be certified accordingly.

CHRISTIANCY J.:

I concur, with my brethren, in the opinion of my brother Campbell. The Recorder properly refused to charge as requested by the defendant's counsel. Under this information, the question of the degrees of murder was wholly immaterial. The statute has not altered the common law definition of murder; but, recognizing it, has simply divided it into classes, or degrees of enormity, for the purpose of apportioning the punishment; and this only when the prosecution is for murder, *eo nomine*. Both classes or degrees are equally murder, and if the defendant committed the assault with the intent to kill, under circumstances where the killing would have been murder in the second degree, he is equally guilty of an assault with intent to murder, as if the intent had been to kill under circumstances which would have made the killing murder in the first degree.

Perhaps the more appropriate charge, because the more simple, less difficult, and more easily intelligible, would have been to give the jury a definition of murder at common law, and to have instructed them that if they should find the prisoner committed the assault with intent to kill, and that the circumstances were such that, if death had ensued, the killing

would have constituted murder under this common law definition, they should find him guilty, otherwise, not guilty.

But such a charge would be equally faultless, in point of law, if, instead of defining murder at common law, it should accurately define what constituted the two degrees of murder under the statute; because these two degrees must, together, include all cases of murder at common law.

The Recorder chose the latter course; but, in defining the degrees, his attention being probably drawn only to the points on which he was requested to charge—which, I infer from the case, were the only points discussed before him—and confining his attention to the statute, which, instead of defining murder, only divides it into degrees, he inadvertently, it would seem, neglected to include in the first degree the ingredient of "malice aforethought." But no specific objection was made to the charge on this account, which, in fairness to the Court, ought to have been made, and doubtless would have been made had the defendant's counsel supposed the omission likely to prejudice his client. Had the attention of the Recorder been called to the point, I can not doubt it would have been at once corrected. Though the definition given by the Recorder, of murder in the second degree, may not have been technically correct, as an abstract definition, yet it was sufficiently so when taken in connection with that part of the charge which had reference to the intent, and could not possibly mislead the jury to the injury of the prisoner.

The only remaining question is (admitting the general exception to the charge sufficient to raise the question), should a new trial be granted on account of the inaccurate definition of murder in the first degree? If the error be one which might have misled the jury to the prejudice of the defendant, a new trial should be granted. If the nature of the transaction were doubtful, or the evidence of it conflicting, so that without weighing the evidence we could not determine whether the defendant might not have been prejudiced by the charge; or if the whole substance of the evidence bearing on the trans-

action were not before us, we might not, without usurping the province of the jury, be able to say that they had not been misled. But as we have all the testimony, and the case states it to have been undisputed, and from the whole transaction we can clearly see that, under any proper charge, the jury could not, without a violation of their oaths, fail to find the defendant guilty, it must be obvious that the defendant has not been injured by the charge, that a new trial would be of no avail, and that it ought therefore to be denied.

The other Justices concurred in the foregoing opinions.