## BROWN *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF ARKANSAS.

No. 863. Submitted March 5, 1895. — Decided June 3, 1895.

An instruction on the trial of a person indicted for murder, whereby the verdict of guilty of murder or manslaughter turns alone upon an inquiry as to the way in which the killing was done, is held to be reversible error.

THE case is stated in the opinion.

*Mr. W. M. Cravens* for plaintiff in error.

*Mr. Assistant Attorney General Whitney* and *Mr. William H. Pope* for defendants in error.

MR. JUSTICE HARLAN delivered the opinion of the court.

This was an indictment, in which the defendant, a white man and not an Indian, was charged in one count with the crime of having killed and murdered, on the 8th day of December, 1891, at the Cherokee Nation, in the Indian country, and within the Western District of Arkansas, one Josiah Poorboy; in another count, with having killed and murdered on the same day and in the same nation, county, and District, one Thomas Whitehead.

The accused was convicted of the crimes charged and sentenced to be hanged. Upon writ of error to this court the judgment was reversed, and the cause was remanded, with directions to grant a new trial. The grounds of that reversal are set forth in the opinion of Mr. Justice Jackson in *Brown* v. *United States*, 150 U. S. 93.

At a second trial Brown was again found guilty on each count. A motion for a new trial having been made and overruled, the accused was sentenced, on the second count, to suffer the punishment of death by hanging, but the sentence on the first count was postponed "to await the result of the judgment against him for killing Whitehead."

This writ of error brings up for review the judgment last rendered.

It appeared in evidence on the last trial, as on the first one, that Poorboy and Whitehead were in search of James Craig and Waco Hampton for the purpose of arresting them. Previous to that time, Craig had been arrested by a deputy marshal, Charles Lamb, upon a charge of adultery, and had escaped from the custody of that officer. Lamb testified that he had verbally authorized Poorboy to arrest Craig. It seems, also, that Hampton was under indictment, and there was a warrant for his arrest in the hands of deputy marshal Bonner.

The shooting occurred in a public road, along which Hampton, Roach, and Brown were riding, (the latter riding behind Roach, on the same horse,) about nine or ten o'clock at night, when an effort was made by Poorboy and Whitehead to arrest Hampton and Brown. There was evidence tending to show

that Brown (who at the time of the killing was 19 years of age) was supposed by Poorboy and Whitehead, in the darkness of the evening, to be Craig. There is considerable conflict in the evidence as to what occurred at the time the shooting took place, but it is reasonably certain that Brown shot and killed either Whitehead or Poorboy, after he and Roach were compelled to dismount from their horse.

After the court had completed its charge to the jury, the accused made two requests for instructions, which were given with certain modifications, but the giving of them was accompanied with the admonition that the principles of law then announced were to be taken in connection with what had been previously said by the court.

The first of the instructions asked by the accused was as follows : " The evidence in this case shows that the deceased, Poorboy and Whitehead, were not officers, but were acting as private citizens, private individuals, without any warrant for Brown, and having no charge against Brown. Therefore, if unintentionally, or by mistake, believing him to be somebody else, they undertook to arrest the defendant, and the defendant resisted such arrest, and in such resistance killed the deceased, or killed the parties attempting such arrest, such killing would not be murder, but would be manslaughter." The court gave this instruction with this modification : " Unless such killing was done *in such a way* as to show brutality, barbarity, and a wicked and malignant purpose. If it was done in that way, then it would still be murder."

There was some evidence before the jury which, if credited, would have justified a verdict against the defendant for manslaughter only. Upon that evidence, doubtless, was based the above instruction asked by the defendant. If in resisting arrest he showed such brutality and barbarity as indicated, in connection with other circumstances, that he did not shoot simply to avoid being wrongfully arrested, but in execution of a wicked or malignant purpose to take life unnecessarily, or pursuant to some previous understanding with Hampton that he would assist in the killing of Whitehead and Poorboy, or either of them, the court should have so modified the defendant's in-

struction as to express that idea. But the jury might well have inferred, from the instruction, as modified, that they were at liberty to return a verdict of murder because alone of the *way* or *mode* in which the killing was done, even if they believed that, apart from the way in which the life of the deceased was taken, the facts made a case of manslaughter, not of murder. We do not think that a verdict of guilty of manslaughter or murder should have turned alone upon an inquiry as to the way in which the killing was done. The inquiry rather should have been whether at the moment the defendant shot there were present such circumstances, taking all of them into consideration, including the mode of killing, as made the taking of the life of the deceased manslaughter and not murder.

Because of the error above indicated, and without considering other questions presented by the assignments of error, the judgment is reversed and the cause remanded, with directions to set aside the judgment as well as the verdict upon each count of the indictment, and grant a new trial.

*Reversed.*

MR. JUSTICE BREWER and MR. JUSTICE BROWN dissented.