# BROWN *v.* UNITED STATES.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF ARKANSAS.

No. 381. Submitted October 28, 1896. — Decided November 16, 1896.

Evidence of the reputation of a man for truth and veracity in the neighborhood of his home is equally competent to affect his credibility as a witness, whether it is founded upon dispassionate judgment, or upon warm admiration for constant truthfulness, or natural indignation at habitual falsehood; and whether his neighbors are virtuous or immoral in their own lives. Such considerations may affect the weight, but do not touch the competency, of the evidence offered to impeach or to support his testimony.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Dickinson* for defendants in error.

No appearance for plaintiff in error.

MR. JUSTICE GRAY delivered the opinion of the court.

This was an indictment charging John Brown, in separate counts, with the murders by shooting of Thomas Whitehead and of Joseph Poorboy, on December 8, 1891, at the Cherokee Nation in the Indian Territory. Two successive convictions upon this indictment were set aside and new trials ordered, because of erroneous rulings and instructions of the court below, as stated in the opinions of this court, reported in 150 U. S. 93, and in 159 U. S. 100.

At the third trial, the government introduced evidence tending to show that the defendant, being nineteen years of age, and one Hampton, being seventeen years old, participated in the killing of Whitehead and Poorboy in a shooting affray about nine or ten o'clock at night on December 8, 1891; that the defendant and Whitehead were white men, and Poorboy and Hampton were Cherokee Indians; and that Hampton had since been killed in resisting arrest. The defendant was ac-

quitted by the jury of the murder of Poorboy; but was again convicted and sentenced upon the count for the killing of Whitehead, and sued out this writ of error.

At this trial, Sam Manus, being called as a witness for the government, testified that on the night of the killing the defendant and Hampton came into his house, and said they had killed Whitehead and his comrade, and taken their fire-arms and three silver dollars, all they had, from Whitehead's pocket, and showed the witness the arms and money. Manus further testified that he had himself been convicted and sentenced to the penitentiary for twelve months for resisting an officer.

Witnesses called by the defendant testified that the reputation of Sam Manus for truth and veracity was bad among the people of the neighborhood where he lived. Other witnesses, called in rebuttal, testified that his reputation for truth and veracity was good.

The court instructed the jury that if "the parties or either one of them was robbed of property or money after being killed, that becomes a potential fact in the case to show that there was a wilful purpose upon the part of those who may have done the killing"; and that "if these parties were killed for the purpose of robbery, the very fact of the robbery shows a state of general malevolence, a general wickedness of purpose and a general design to do wrong, that is of a doubly criminal character in showing the existence of this element of the crime of murder." The defendant excepted to these instructions.

The court further instructed the jury as follows: "One of the principal witnesses in this case is Mr. Sam Manus. He comes before you and swears to inculpatory statements made by the defendant as to the robbery. He swears to you as to the statement of the defendant that he got three dollars in silver. He swears to you in reference to a statement made by the defendant as to taking the fire-arms of these men who were killed. That shows a robbery, if true. Efforts have been made and brought to bear here to break down his evidence, to destroy his evidence before you, by impeaching his general character for truth. It is necessary in the interest of

truth, and in the interest of justice, and in the interest of the enforcement of the law in this jurisdiction, that I should give you an admonition, and the one I am now about to give you. That is a proper way to attack a witness. It is a proper way to destroy his evidence. But it must amount to proof of a certain character. It must show a certain condition. It is a method that is easily resorted to; that is often resorted to. I cite these conditions, because I have a right to, on account of their notoriety, on account of its being common knowledge before you, and before this court, that under the law I can take judicial notice of. I say it is a method easily resorted to, often resorted to in this jurisdiction, and resorted to as often when it is based upon fraud, upon perjury, and upon subornation of perjury. It is a method of attack that lets in personal spite, neighborhood grievances, personal animosity, personal bickering, and the personal feelings of people. It opens wide the door for the admission of all these things that if properly considered go to cloud the judgment of men; but in many of these cases, unfortunately, they are the very seeds from which spring the judgment of the witness as to the general character of the witness who comes before you. Now, that is not the source of general character. Animosity, the feeling of hatred, nor of neighborhood bickering, that may produce a feeling of animosity against a man, is not the source from which impeachment by proof of general bad character is to come. It must come to you as the opinion of the people in the neighborhood where the man is known, and that opinion must be founded upon a state that is dispassionate, must grow out of the dispassionate judgment of men, who are honest men, and good men, and able and competent to make up a judgment of that kind. It is not the judgment of the bad people, the criminal element, the man of crime, that is to fasten upon a man and blacken his name; that is not the state of case that would show you that he has general bad character. That is not the condition that must come to you when the attack is made to be effective; but it must come to you as an honest reflection of the opinion of the people generally in the neighborhood where the man lives and is known."

The defendant, at the time of the delivery of the charge, and before the jury retired, as appears by the bill of exceptions allowed by the presiding judge, alleged exceptions "to all the remarks of the court in reference to the impeachment of the witness Sam Manus," and "to that part of the charge in regard to the evidence of Sam Manus"; and thereby distinctly and sufficiently excepted to the instruction just quoted.

There was conflicting testimony in the case as to what took place in the affray when Whitehead and Poorboy were killed; and the government much relied on subsequent admissions by the defendant, as testified to by Sam Manus. His character for truth and veracity was therefore an important element to be considered by the jury who were to decide the guilt or innocence of the accused.

The jury were indeed instructed, in terms of themselves unobjectionable, that the general character of a person must come to the jury " as the opinion of the people in the neighborhood where the man is known"; and again, in equivalent phrase, that it must come to them " as an honest reflection of the opinion of the people generally in the neighborhood where the person lives and is known."

Those general statements, however, were materially qualified by the intervening definition that "that opinion must be founded upon a state that is dispassionate, must grow out of the dispassionate judgment of men, who are honest men, and good men, and able and competent to make up a judgment of that kind "; and " not the judgment of bad people, the criminal element, the man of crime."

The jury were thus plainly told, not only that reputation could not grow out of the opinion of criminal or bad men; but that it could only grow out of the dispassionate judgment of men who were honest and good, and competent to form such a judgment. And this, as appears throughout the instruction upon the subject, was declared to be a necessary condition of the admissibility of the impeaching testimony.

The instruction given was too narrow and restrictive. Evidence of the reputation of a man for truth and veracity in the

neighborhood of his home is equally competent to affect his credibility as a witness, whether it is founded upon dispassionate judgment, or upon warm admiration for constant truthfulness, or natural indignation at habitual falsehood ; and whether his neighbors are virtuous or immoral in their own lives. Such considerations may affect the weight, but do not touch the competency, of the evidence offered to impeach or to support his testimony.

The instruction in question is pervaded by an error analogous to that for which the judgment was reversed in *Smith* v. *United States*, 161 U. S. 85.

As the error in this respect requires the verdict to be set aside, it would be superfluous to pass upon the many other questions of law presented by the bill of exceptions, and by the assignments of error, some of which would require grave consideration, were it necessary to decide them in the form in which they are presented by this record.

*Judgment reversed, and case remanded, with directions to set aside the verdict and to order a new trial.*

MR. JUSTICE BREWER (with whom concurred MR. JUSTICE BROWN and MR. JUSTICE PECKHAM) dissenting.

I dissent : First. Because after three juries, thirty-six jurors, have agreed in finding a defendant guilty of the crime charged, and such finding has each time been approved by the trial judge, the judgment based upon the last verdict ought not to be disturbed unless it is manifest that the verdict is against the truth of the case, or that the court grossly and prejudicially erred on the trial.

Second. Because the testimony in this case discloses an outrageous crime, showing that this defendant in connection with another party, that other party already convicted of one murder and a fugitive from justice, in the night time called from their slumbers two officers of the law and shot them down without provocation. Justice and the protection of society unite in saying that it is high time such a crime was punished.

Third. Because no sufficient exception was taken. The

entire charge of the court fills about thirty-seven closely printed pages of the record. If reprinted here it would make nearly seventy-five pages of this volume. With the exception of two or three short instructions at the close, it does not consist of separate instructions, but is one continuous charge. This charge was excepted to, as appears from the record, in this way: "Defendant, John Brown, excepts to those parts of the charge of the court to the jury at the time of the delivery thereof, as follows, to wit, first, to that part of the charge relating to what the court says as to evidence that 'cannot be bullied or bribed,' as to the 'fruits of the crime, the taking of the money,' etc.; second, as to the definition and illustrations of 'wilfully'" and so on through a series of twenty-five or thirty specifications, covering therewith the entire charge. The seventeenth is as follows: "Defendant excepts to all the remarks of the court in reference to the impeachment of the witness, Sam Manus"; and again, "also excepts to that part of the charge in regard to the evidence of Sam Manus." And in this way only was objection made or exception taken to the charge, or any part of it. Now, there is about a page referring to the testimony of Sam Manus. On this page are stated certain rules of law, which it is conceded are correct, and it is only a portion of the language used in reference to the testimony of Sam Manus that the court considers objectionable. I have always understood that the purpose of an objection and exception was to call the attention of the trial court to the particular words or phrases complained of in order that it might have an opportunity to consider, and if need be correct the alleged error. The decision in this case seems to entirely ignore this purpose and to make the noting of an objection and exception simply a request to the appellate court to search through the several pages of a charge for any sentence or sentences which its critical eye may disapprove of. For all practical purposes a single exception might just as well have been taken to the entire charge.

Fourth. Because this part of the charge is as a whole unobjectionable. The testimony referred to was admitted, and therefore held to be competent. The rule of law in reference to impeachment was correctly stated, and the objectionable

matter was prefaced by a declaration of the court that it gives a matter of admonition. That admonition was just and sound. Reputation is the general judgment of the community in respect to the witness whose reputation is challenged, and is not made up by the flippant talk of a few outlaws.

For these reasons I dissent.

MR. JUSTICE BROWN and MR. JUSTICE PECKHAM concur in this dissent.