## PEOPLE v. LAMBO.

1. CRIMINAL LAW—CORPUS DELICTI—BREAKING AND ENTERING—EVIDENCE—ADMISSIBILITY.

   *Corpus delicti* of crime of breaking and entering with intent to commit larceny *held*, established by unexplained presence of defendant in a grocery store at 3:45 a.m. with a window screen and window guard disturbed (CL 1948, § 750.110, as amended by PA 1964, No 133).

2. SAME—BREAKING AND ENTERING—ENTRANCE.

   Entrance is a breaking sufficient in law to constitute the crime of breaking and entering with intent to commit larceny if any force at all is necessary to effect an entrance into a building through any place of ingress, usual or unusual, whether open, partly open, or closed, if the other elements of the offense are present (CL 1948, § 750.110, as amended by PA 1964, No 133).

3. EVIDENCE—INTENT—INFERENCES.

   Intent must be established as an inference of fact, to the satisfaction of the jury, but they may draw that inference from any facts in evidence which fairly prove its existence.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 13 Am Jur 2d, Burglary § 48; 30 Am Jur 2d, Evidence §§ 1140, 1141.
[2] 13 Am Jur 2d, Burglary §§ 11, 12.
[3] 21 Am Jur 2d, Criminal Law § 81; 29 Am Jur 2d, Evidence § 363.
[4] 29 Am Jur 2d, Evidence § 613.
[5] 31 Am Jur, Jury §§ 136, 138.
[6] 31 Am Jur, Jury §§ 136–140.
[7] 31 Am Jur, Jury §§ 146, 157.
[8] 31 Am Jur, Jury § 138.
[9] 31 Am Jur, Jury § 154.
[10, 11] 29 Am Jur 2d, Evidence §§ 555–557.
Necessity of informing suspect of rights under privilege against self-incrimination, prior to police interrogation. 10 ALR3d 1054.

4. Criminal Law—Corpus Delicti—Admissions.

Admission of testimony of police officers as to statements made by defendant to them at time of his arrest where their testimony had previously established the *corpus delicti* of crime of breaking and entering with intent to commit larceny *held,* not error (CL 1948, § 750.110, as amended by PA 1964, No 133).

5. Jury—Voir Dire—Discretion of Court—Challenge.

Error, if any, in the conduct of a *voir dire* examination of jurors by the trial court, must arise in the manner of conducting it and whether discretion was abused in refusal to ask proper and relevant questions submitted to the court, the overriding consideration with respect to the questions being whether the answers were essential to counsel for an intelligent exercise of his challenge in his effort to obtain a fair and impartial jury (GCR 1963, 511.3).

6. Same—Voir Dire Examination by Court.

Trial court's inquiry of each juror whether he knew of any reason why he could not sit and render a fair and impartial verdict, based upon the evidence produced in open court and further asking each juror if he knew of any matter, fact, or circumstance that might tend to prejudice him one way or another in the case, *held* sufficient *voir dire* examination of jurors in criminal case (GCR 1963, 511.3).

7. Same—Personal History Questionnaires—Challenges.

Personal history questionnaires of jurors give information upon which an attorney may base challenges (GCR 1963, 510).

8. Same—Voir Dire—Discretion of Court.

The latitude of *voir dire* interrogation is largely a matter of judicial discretion.

9. Same—Objection—Voir Dire—Waiver.

A party who objects to a *voir dire* interrogation waives any error there may have been by thereafter expressing himself as satisfied with the jury.

10. Criminal Law—Procedural Safeguards—Prospective Application of Standards—Right to Remain Silent—Assistance of Counsel.

Failure to observe guidelines and procedural safeguards, set forth by the United States Supreme Court, of the right to be advised of the right to remain silent and of the right to counsel at time of being held for investigation for crime are available only to persons whose trials had not begun by June 13, 1966, the time the case specifically setting forth such guidelines was decided.

11. SAME—INTERROGATION BY POLICE OFFICERS—EVIDENCE—WARN-
ING.

Evidence of statements made by defendant to police officer at
police headquarters after defendant, represented by counsel,
had been arraigned on charge of breaking and entering a store
with intent to commit a larceny *held*, not reversible error in
trial conducted in January, 1966, where defendant's interrogator
advised defendant that anything he said might be used against
him, that he need not say anything, and that his attorney could
be present if he so desired (CL 1948, § 750.110, as amended
by PA 1964, No 133).

Appeal from Ingham; Salmon (Marvin J.), J.
Submitted Division 2 April 5, 1967, at Lansing.
(Docket No. 2,329.) Decided November 27, 1967.

Alexander Lambo was convicted of breaking and
entering a store with intent to commit larceny
therein. Defendant appeals. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A.
Derengoski*, Solicitor General, *Donald L. Reisig*,
Prosecuting Attorney, and *James R. Ramsey*, As-
sistant Prosecuting Attorney, for the people.

*John L. Coté*, for defendant.

A. C. MILLER, J. Defendant was convicted after
trial by jury of the offense of breaking and enter-
ing a store with intent to commit larceny therein[1]
and on February 11, 1966, was sentenced to prison
for a term of 5 to 10 years.

In his appeal defendant asserts three grounds
for reversal: (1) receipt in evidence of admissions
of defendant prior to establishment of *corpus de-
licti*; (2) refusal of trial judge to ask the jury the
following question on *voir dire*: "Now, would the

[1] CL 1948, § 750.110, as amended by PA 1964, No 133 (Stat Ann
1962 Rev § 28,305).

election of the defendant in this case not to take the stand in any way cause you to conclude that his failure to do so is evidence of his guilt?"; and (3) failure of officers to apprise defendant of his constitutional rights during interrogation.

The expression "caught in the act" applies to Mr. Alexander Lambo. Police officers on routine patrol at 3:45 a.m. heard a noise inside the store building that sounded like metal hitting concrete. They investigated and found the defendant inside. They asked him what he was doing there and promptly arrested him. Investigation · indicated that a window screen had been pushed in and that two boards guarding a window opening had been tampered with—one removed and the other merely hanging from a nail. The screen and window boards had been in order the night before. The officer was able to enter the building through this opening by merely moving the board to one side.

Subsequent investigation disclosed that there was dynamite in a rat hole near the window, tire irons were found inside the building, and pop cases just inside the building near the window were in a state of disarray. There was testimony that this was not the situation at 10 p.m. when the building was locked by the departing employees.

The defendant's first ground that competent evidence did not establish the *corpus delicti* is without merit. The unexplained presence of the defendant in a grocery store at 3:45 a.m., he being the sole occupant with a window screen and window guards disturbed, clearly established a prima facie *breaking* and *entering*.

In the case of *People* v. *White* (1908), 153 Mich 617, 621, the Court said:

"We think the rule adopted  *  *  *  is a reasonable one. It is, in effect, that if any force at all

is necessary to effect an entrance into a building, through any place of ingress, usual or unusual, whether open, partly open or closed, such entrance is a breaking sufficient in law."

There is also ample basis for drawing the inference that a prima facie case of intent to commit larceny was shown, not by the pyramiding of inferences, but rather based on the facts and clearly within the long-established rule set forth by Mr. Justice CAMPBELL in *People* v. *Scott* (1858), 6 Mich 287, 296:

"The intent  *  *  *  must undoubtedly be established, as an inference of fact, to the satisfaction of the jury; but they may draw that inference, as they draw all other inferences, from any fact in evidence which, to their minds, fairly proves its existence. Intentions can only be proved by acts, as juries cannot look into the breast of the criminal. And where any act is knowingly committed which naturally and usually leads to certain consequences, a jury certainly has the right, in the exercise of ordinary sagacity, to draw the inference that such results are intended."

The unexplained presence of the defendant in a grocery store at 3:45 a.m. would be sufficient alone to permit the jury to find the intent to commit larceny. Here there were the many other facts. A classic prima facie case was presented. The statements given to the officers were properly admitted into evidence over this objection.

Appellant's second ground pertaining to the *voir dire* presents a more serious challenge. A similar problem has been recently discussed by Judge FITZGERALD in *People* v. *Simpson* (1966), 5 Mich App 479. Discussing GCR 1963, 511.3, Judge FITZGERALD states as follows at page 483:

"Error, if any, must arise in the manner of conducting that *voir dire* and whether discretion was abused in refusal to ask proper and relevant questions submitted to the court. In assaying the questions, the overriding consideration must be whether the answers thereto were essential to counsel for an intelligent exercise of his challenges in his effort to obtain a fair and impartial jury."

The posed question purports to inquire as to the state of mind of the juror, but really involves a statement of legal principle. There are several approaches in the courts of other States to this problem of *voir dire* interrogation involving rules of law. For a recent compilation, see 99 ALR2d 1, and 50 CJS, Juries, § 275. One of the preferred methods is to have the court briefly outline the rules of law covered in the *voir dire* requests, and then ask the jurors if they would and could follow such instructions. *Clem* v. *State* (1958), 166 Tex Crim 429 (314 SW2d 579). Any other course is likely to result in undue repetition of certain rules.

Michigan gives the trial court wide discretion. The controlling case is *People* v. *Lockhart* (1955), 342 Mich 595, under the prior but similar court rule.[2] In that case, appellant requested that the jury be asked what their verdict would be if the evidence were evenly balanced. The trial court refused to ask that question and the Supreme Court recognized its true nature as: "basically a question of law." The trial court did ask each juror (p 599):

"Whether the juror knew of any reason why he could not sit and render a fair and impartial verdict, based upon the evidence produced in open court and further asked of each juror, 'Do you know of any matter, fact or circumstance that might tend to prejudice you one way or another in this case?'"

---

[2] Court Rule No 37 (1945).

The Supreme Court held these two questions were sufficient (p 600):

"In view of the answers of the jurors, disclosing want of prejudice, the ruling of the court was not reversible error. There was no abuse by the trial court of the discretion vested in him under the court rule."

These identical questions were asked by the trial court in the case at bar. Therefore, the trial judge did not abuse his discretion.

Our present rules in addition make available to counsel a personal history questionnaire. GCR 1963, 510. In *Kuisel* v. *Farrar* (1967), 6 Mich App 560, 563, 564, the Court said:

"The questionnaires gave the appellants' attorney ample additional information upon which to base his challenges. While a fair range of latitude must be allowed in putting questions to a jury, as suggested by counsel, the latitude of *voir dire* interrogation is largely a matter of judicial discretion. *Darr* v. *Buckley* (1959), 355 Mich 392, *People* v. *Lockhart* (1955), 342 Mich 595, *Church* v. *Stoldt* (1921), 215 Mich 469. The question thus becomes whether the court abused its discretion in the conduct of the *voir dire* examination."

Furthermore, defendant's counsel did indicate at the conclusion of the court's *voir dire* that he was satisfied with the jury. While the attorney renewed his objection at the first recess, this nevertheless was after the jury had been sworn. Such a statement by counsel for a party has been held to be binding upon him. In *People* v. *Rose* (1934), 268 Mich 529, 531, the Court ruled:

"If the objecting party afterwards expresses himself as satisfied with the jury, he thereby waives the error."

Also in *Kuisel* v. *Farrar, supra,* the Court noted (p 564):

"At the conclusion of the *voir dire* examination, the attorney for the appellant stated, 'The plaintiff is satisfied,' and that he had nothing further."

The remaining question pertains to warning of constitutional rights and police interrogation. The question is answered by the United States Supreme Court in *Johnson* v. *New Jersey,* 384 US 719 (86 S Ct 1772, 16 L ed 2d 882), where the Court held that the decision in *Miranda* v. *Arizona,* 384 US 436 (86 S Ct 1602, 16 L ed 2d 694, 10 ALR3d 974) should not be applied to trials beginning prior to June 13, 1966. The Supreme Court of Michigan in *People* v. *Fordyce* (1966), 378 Mich 208, adopted the same rule for Michigan trials.

The rights that defendant-appellant claims were violated were *Miranda*-given rights. Since the trial took place in January of 1966, no error could be predicated on failure to afford the rights conferred upon a suspect by *Miranda.* No other questions were raised at the pretrial hearing which would justify rejection of the testimony regarding the statements. Furthermore, defendant was warned at the time of arrest as follows:

"I informed him that anything he said could be held against him later, that he had a right to an attorney, and also the right to make a phone call when he got to the station, and he said that he understood."

Shortly after the arraignment defendant was interrogated at police headquarters, but again only after the giving of the following warning:

"I told him that I was a police officer and that anything that he said could be used against him; that he didn't have to make any statements unless

he wished to and that I was aware he was represented by an attorney and that the attorney could be present if he so desired."

Professional ethics[3] pertaining to discussion of matters with the client of another attorney may have been involved if this had been conducted by a member of the prosecutor's staff, but this would not be a basis for rejection of proofs. This interrogation was conducted by a police officer.

The record contained ample proof of *corpus delicti* prior to receiving the testimony of defendant's admissions, there was no constitutional or other reason for rejecting those admissions and the trial judge did not abuse his discretion in the manner of conducting the *voir dire*.

Affirmed.

QUINN, P. J., and McGREGOR, J., concurred.

---

3 Canons of Professional Ethics, No 9, 38 Mich SBJ 14 (May, 1959).