## PEOPLE v EISENBERG

1. Criminal Law—Self-Defense—Unlawful Arrest—Right to Resist—Assault and Battery.

   A person may use such reasonable force as is necessary to resist an unlawful arrest; the right to resist, however, is merely one aspect of self-defense because an unlawful arrest is nothing more than an assault and battery against which the person sought to be restrained may defend himself as he would against any other unlawful intrusion upon his person or liberty.

2. Criminal Law—Self-Defense—Reasonable Belief—Actual Necessity—Use of Force.

   A person, under the theory of self-defense, is justified in using deadly force to repel an assault only if he honestly believes under all the circumstances as they appear to him that he is in danger of losing his life or suffering great bodily harm and that his actions are necessary to save himself from the apparent danger.

3. Criminal Law—Self-Defense—Unlawful Arrest—Right to Resist—Use of Force.

   The right to resist an unlawful arrest can never include the right to use deadly force.

4. Criminal Law—Unlawful Arrest—Right to Resist—Limitations.

   The common-law right to resist an unlawful arrest continues to be recognized in Michigan; there is, however, a limitation on that right in favor of the safety of the citizens and law enforcement officials of the state.

References for Points in Headnotes

[1–5, 11] 5 Am Jur 2d, Arrest § 94.
  40 Am Jur 2d, Homicide § 102 *et seq.*
[6] 40 Am Jur 2d, Homicide § 519.
[7, 8, 11] 40 Am Jur 2d, Homicide § 569.
[9, 12] 40 Am Jur 2d, Homicide § 578.
[10, 12] 75 Am Jur 2d, Trial § 321.
[13, 14] 29 Am Jur 2d, Evidence § 251 *et seq.*

5. CRIMINAL LAW—ARREST—RIGHT TO RESIST—USE OF FORCE—WAR-
RANTS.

A person does not have the right to use deadly force to resist
arrest if he knows that the persons making the arrest are
police officers; and this is so even if the warrants under which
the officers are operating are invalid.

6. CRIMINAL LAW—INSTRUCTIONS TO JURY—UNLAWFUL ARREST—
RIGHT TO RESIST—USE OF FORCE—SELF-DEFENSE.

An instruction on the right to resist an unlawful arrest is
unnecessary where the defendant has claimed self-defense and
the jury was given comprehensive instructions on the law of
self-defense and defendant's rights thereunder and where the
defendant believed he faced only arrest and detention; the
defendant had no right to resist with deadly force even if the
arrest is subsequently determined to have been unlawful.

7. HOMICIDE—ASSAULT—SPECIFIC INTENT—INTENT TO KILL.

The elements of the crime of assault with intent to commit
murder are: (1) an assault; (2) with specific intent to murder; (3)
and which, if successful, would make the killing murder.

8. HOMICIDE—ASSAULT—INTENT TO KILL—FIRST-DEGREE MURDER—
SECOND-DEGREE MURDER—MANSLAUGHTER—JUSTIFIABLE HOMI-
CIDE—EXCUSABLE HOMICIDE.

Proof of an assault with intent to kill under circumstances where
the killing would have been either first or second-degree mur-
der establishes the intention to take life under conditions
which would not render the killing manslaughter or justifiable
or excusable homicide.

9. HOMICIDE—INTENT TO KILL—TRIER OF FACT—CONDUCT—INFER-
ENCES.

The trier of fact may infer an intent to kill from facts in evidence
and from conduct the natural tendency of which is to cause
death or great bodily harm.

10. CRIMINAL LAW—EVIDENCE—JURY QUESTION—JURY DETERMINA-
TION.

Testimony favorable to a defendant is not enough to prevent a
criminal case from going to the jury which is free to believe or
disbelieve, in whole or in part, any of the evidence presented at
trial.

11. HOMICIDE—UNLAWFUL ARREST—RIGHT TO RESIST—MANSLAUGHTER
—MALICE—DELIBERATION.

Generally when one kills a person who is unlawfully attempting

to arrest him during the process of resisting such arrest that one is guilty of manslaughter only; but the law does not arbitrarily reduce to the grade of manslaughter every homicide which may be committed in the act of such resistance without reference to the presence or absence of actual malice and deliberation.

12. HOMICIDE—UNLAWFUL ARREST—MALICE—DELIBERATION—JURY QUESTION.

The presence or absence of actual malice and deliberation when one kills a person who is unlawfully attempting to arrest him is a question for the jury.

13. CRIMINAL LAW—COLLATERAL EVIDENCE—ADMISSIBILITY—EVIDENCE —CROSS-EXAMINATION—JUDGE'S DISCRETION—APPEAL AND ERROR.

The extent to which collateral matters may be introduced during cross-examination in a criminal case is within the discretion of the trial court whose decision is subject to review only for an abuse thereof.

14. CRIMINAL LAW—EVIDENCE—ADMISSIBILITY—JUDGE'S DISCRETION— APPEAL AND ERROR.

A trial court did not abuse its discretion in excluding evidence of Treasury Department regulations describing warrant procedure and photographs of a defendant's apartment after search and seizure where the trial was for assault of a police officer with intent to commit murder and such evidence only remotely bore upon the assault of the police officer, if at all.

Appeal from Oakland, Richard D. Kuhn, J. Submitted March 4, 1976, at Lansing. (Docket No. 20495.) Decided November 8, 1976. Leave to appeal applied for.

Walter A. Eisenberg was convicted of felonious assault. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, *Robert C. Williams,* Chief Appellate Counsel, and *David A. Potts,* Assistant Appellate Counsel, for the people.

*Campbell, Kurzman, Leitman, Plunkett & Rog-*

*genbaum* (by *Bruce T. Leitman, Ralph A. Safford* and *Mark J. Glazer),* for defendant.

Before: D. F. WALSH, P. J., and J. H. GILLIS and QUINN, JJ.

D. F. WALSH, P. J. Defendant was charged with assault with intent to commit murder,[1] tried by jury, and convicted of felonious assault.[2] He was sentenced to 2-1/2 to 4 years in prison and fined $1,000 and now appeals.

On the morning of April 13, 1973, 12 Federal and local police officers armed with Federal search and arrest warrants drove a battering ram through the door of the defendant's ninth floor apartment in Southfield, Michigan. The warrants had been issued by a Federal magistrate pursuant to an affidavit asserting a violation of the Federal Firearms Act, 18 USC 921, *et seq.* Specifically, the defendant was accused of falsely answering a question on a Federal form required for the purchase of a handgun.

The people's testimony at trial established that prior to their forced entry, the officers, none of whom were in uniform, twice announced that they were police and that they had a warrant. Once the door of defendant's one-bedroom apartment had been broken open, the agents again identified themselves as they entered the living room with handguns drawn. Two men were in the apartment at the time of entry; one was in the living room and unarmed, the other was the defendant who emerged from his bedroom with a gun in his hand. One agent testified that some time during this incident he heard either the defendant or the

---

[1] MCLA 750.83; MSA 28.278.

[2] MCLA 750.82; MSA 28.277.

other man ask, "are you police?" Agent Clapp indicated that when he saw the defendant was armed he shouted, "police, drop it", or words to that effect. Instead the defendant discharged his weapon in the direction of Officer McKee. The bullet missed McKee and ricocheted off an apartment wall striking Special Agent Clapp in the face.

The defendant admitted the assault on Clapp but claimed it was inflicted in self-defense. He testified that he had been asleep in his bedroom prior to the agents' forced entry and at no time heard the officers knock or identify themselves. He said he awoke to the sound of a loud crash at his apartment door, grabbed his revolver and ran out of his bedroom. When he saw a rather large man, Southfield Police Officer Dennis McKee, charging at him with a gun, he fired, missing McKee but wounding Agent Clapp.

The defendant testified further that he did not know the men in his apartment were police officers until after the shooting, that he is very near sighted, that he had seen only Officer McKee coming at him, and that he shot in his general direction because he was in fear that his life was in jeopardy.

At preliminary examination and again at trial defendant requested a ruling on the legality of the arrest. Both the examining magistrate and the trial judge refused to make such a ruling. It was and is defendant's position that the arrest was in fact illegal because of deficiencies in the warrants and supporting affidavits and that the denial of a judicial ruling to that effect precluded the defendant from asserting as a defense the right to resist an unlawful arrest.

The people's response is that there was no need

for the trial judge to determine the validity of defendant's arrest. Since Eisenberg testified that he was unaware that his assailants were police officers, he should be precluded from asserting the defense of resisting an unlawful arrest.

It is true, as defendant contends, that the jury may have found that the defendant knew that the men breaking into his apartment were police officers coming to arrest him and from that the jury may have concluded that Eisenberg had no right to resist. This would have been an erroneous conclusion if the arrest was unlawful since, in Michigan, one may use such reasonable force as is necessary to resist an unlawful arrest. *People v Krum,* 374 Mich 356; 132 NW2d 69 (1965) *cert den,* 381 US 935; 85 S Ct 1765; 14 L Ed 2d 699 (1965), *People v Bonello,* 25 Mich App 600; 181 NW2d 652 (1970), *People v Gray,* 23 Mich App 139; 178 NW2d 172 (1970).

The right to resist an unlawful arrest, however, is merely one aspect of self-defense. An unlawful arrest is nothing more than an assault and battery against which the person sought to be restrained may defend himself as he would against any other unlawful intrusion upon his person or liberty. *Curtis v United States,* 222 A2d 840 (DC App, 1966), *Wilkinson v State,* 143 Miss 324; 108 So 711; 46 ALR 895 (1926), 1 Anderson, *Wharton's Criminal Law & Procedure,* § 349, pp 698–699 (1957).

Under the theory of *self-defense* one is justified in using deadly force to repel an assault only if he honestly believes under all the circumstances as they appeared to him that he is in danger of losing his life or suffering great bodily harm and that his actions are necessary to save himself from the apparent danger. *People v Lennon,* 71 Mich 298;

38 NW 871 (1888), *People v Shelton,* 64 Mich App 154; 235 NW2d 93 (1975). An *unlawful arrest,* however, involves a less substantial danger. The amount of resistance which will be considered reasonable, therefore, must be reduced proportionally. The result of an unlawful arrest is temporary detention and loss of liberty. We conclude, therefore, that the right to resist an unlawful arrest can never include the right to use deadly force.[3]

This conclusion is supported by the recent trend in other jurisdictions to eliminate entirely the right to resist an unlawful arrest. Chevigny, *The Right to Resist an Unlawful Arrest,* 78 Yale L J 1128, 1132–1133 (1969); 44 ALR3d 1078, 1087. The movement is based in part upon the recognition that personal liberty, unlike bodily integrity, may be restored through the judicial process. A peaceful determination of an officer's authority to arrest, therefore, is to be preferred. *People v Curtis,* 70 Cal 2d 347; 74 Cal Rptr 713; 450 P2d 33 (1969), *State v Mulvihill,* 57 NJ 151; 270 A2d 277; 44 ALR3d 1071 (1970). While Michigan continues to recognize the common law right to resist an unlawful arrest, the foregoing considerations compel a limitation on that right in favor of the safety of the citizens and law enforcement officials of this state.

Accordingly, although Eisenberg would have had the right to use deadly force, if necessary, to defend himself if he believed that he was in dan-

---

[3] It is conceivable, of course, that a person might believe and have reason to believe that one known to be a police officer intends, not to arrest him, but rather to kill him or cause him great bodily harm. In such a case the victim has a right to defend himself, with deadly force if necessary, even if the officer possesses a *valid* warrant. This does not alter our conclusion that deadly force can never be used in resisting an unlawful arrest, since the resistance under these circumstances would not be to the arrest but to the threat of death or great bodily harm.

ger of death or great bodily harm, he did not have the right to use deadly force to resist if he knew that the intruders in his apartment were police officers coming to arrest him. This is so even if the warrants under which the officers were operating were invalid.

Therefore, no matter what the jury may have believed about Walter Eisenberg's state of mind when the officers broke into his apartment, it was properly instructed as to the law to be applied. Eisenberg had an opportunity to assert and did assert the defense of self-defense. The circumstances surrounding the entry into his apartment, including the force used, the hour of the morning, and the fact that the police were not in uniform as well as the other details of the entry, were fully explored in the testimony. The question of whether the defendant believed and had reason to believe that he faced death or serious bodily harm at the hands of the officers, and not solely loss of liberty, was submitted to the jury in a comprehensive set of instructions on the law of self-defense and defendant's rights thereunder. There is no assignment of error as to those instructions.

There was no instruction on the right to resist an unlawful arrest, and properly so. If the defendant believed he faced only arrest and detention, he had no right to resist with deadly force even if the arrest were subsequently determined to have been unlawful.

Defendant next claims that his conviction of felonious assault should be reversed because it was the result of an improper compromise verdict. His theory is that the people failed to present evidence from which the jury could find all the elements of the crime of assault with intent to commit murder and, under the rationale of *People v Vail,* 393

Mich 460, 464; 227 NW2d 535 (1975), the trial judge should have directed a verdict of acquittal.

"The elements of the crime of assault with intent to commit murder are: (1) an assault; (2) with specific intent to murder; (3) and which, if successful would make the killing murder." *People v Branner,* 53 Mich App 541, 544; 220 NW2d 183 (1974). See, also, *People v Scott,* 6 Mich 287 (1859). The defendant admits the assault upon Agent Clapp but claims that there was insufficient evidence to show the remaining elements.

The intent to murder which must be proven under the statute is the "intention to take life under any circumstances which would not render the killing manslaughter or justifiable or excusable homicide". *People v Scott, supra,* at 292. Therefore, proof of an assault with intent to kill, under circumstances where the killing would have been either first or second-degree murder, establishes this element of the offense. The trier of fact may infer an intent to kill from facts in evidence. *People v Scott, supra, People v Ray,* 56 Mich App 610; 224 NW2d 735 (1974). In the instant case, there was testimony that the police officers announced their purpose and identity both prior to breaking in the door of the defendant's apartment and after entering. Agent Clapp testified that when he saw that the defendant was armed he identified himself as an officer and ordered defendant to drop the weapon. Defendant, instead, discharged his weapon in the direction of Officer McKee. An intent to kill may be inferred from conduct the natural tendency of which is to cause death or great bodily harm. *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971). See also, *People v Robert Jackson,* 63 Mich App 249; 234 NW2d 471 (1975), *People v Ray, supra.* Sufficient

evidence was introduced in the instant case, therefore, to establish this element of the crime charged.

Defendant argues that the maximum charge warranted by the facts was voluntary manslaughter because the intent to kill was vitiated by the evidence of provocation. It is elementary, however, that testimony favorable to the defendant is not enough to prevent a criminal case from going to the jury. The trier of fact is free to believe or disbelieve, in whole or in part, any of the evidence presented at trial. *People v Fuller,* 395 Mich 451; 236 NW2d 58 (1975), *People v Berthiaume,* 59 Mich App 451; 229 NW2d 497 (1975).

Defendant contends that the third element of the offense, that is, if death had ensued, the killing would have constituted murder, was not established by the evidence because a killing perpetrated in the course of repelling an unlawful arrest can never result in a higher charge than manslaughter. Defendant primarily cites *People v Burt,* 51 Mich 199; 16 NW 378 (1883), and *Bad Elk v United States,* 177 US 529; 20 S Ct 729; 44 L Ed 874 (1900).

Generally, when one kills a person who is unlawfully attempting to arrest him during the process of resisting such arrest, he is guilty of manslaughter only. The basis of the rule is that an unlawful attempt to deprive a person of his liberty is such a provocation that it reduces the killing from murder to manslaughter. If the accused, however, is not actually provoked by the attempted unlawful arrest, but kills the person seeking to effectuate the arrest out of malice, he is guilty of murder. 40 Am Jur 2d, Homicide, § 104, p 399. See, *Brown v United States,* 159 US 100; 16 S Ct 29; 40 L Ed 90 (1895). The decision of the

Michigan Supreme Court in *People v Burt, supra,* does not extend the rule beyond the described limits.

In *Burt,* an Ingham County constable and his associate Van Etter "procured revolvers and stationed themselves by a bridge near Fowlerville in Livingston County, with the purpose of compelling passers-by to submit to a search, expecting thereby to get at indications of guilt in somebody" for certain burglaries committed in Ingham County. A man who the people claimed to be Burt refused to submit, and as he walked away Van Etter and the constable followed him with their revolvers drawn and cocked; whereupon the man turned and fired upon Van Etter.

The attorney general in *Burt* confessed error on appeal, apparently because of the improper admission of certain evidence. The Court spoke briefly to this issue, and then openly expressed its view that the defendant should have been acquitted on the theory of self-defense. The Court, per Justice CAMPBELL, finally remarked:

"This, however, is now immaterial, because even if the homicide was voluntary, there can be no doubt that, having been provoked by unlawful violence and the display of deadly weapons to compel submission to a wrongful arrest, the killing could not be more than manslaughter; and it should have been so held." *People v Burt, supra,* p 203.

Justice CAMPBELL's statement is clearly a factual determination that, on the basis of the record then before the Court, the attempt to arrest the accused unlawfully was sufficient provocation to reduce the degree of the crime. The quoted section does not evidence an intent to characterize every unlawful arrest as provocation sufficient to mitigate an

intent to kill. Even accepting defendant's interpretation of the quoted language, given the Court's resolution of the evidentiary question, Justice CAMPBELL's statement is dictum which this Court declines to follow. We think a more accurate statement of the law is found in *Long v State,* 223 Tenn 238; 443 SW2d 476, 479 (1969):

> "[T]he only effect to be given to the fact that the killing was in resisting an illegal arrest, rests upon the proven or presumed provocation; and the law does not arbitrarily reduce to the grade of manslaughter every homicide, which may be committed in the act of such resistance, without reference to the presence or absence of actual malice and deliberation.
>
> "An unlawful arrest, made *bona fide* under color of legal authority, is a trespass, and like other trespasses, it may, or may not, in the particular case, constitute an aggravated provocation. And the mere fact that the officer or citizen attempting the arrest, and being slain in so doing, has exceeded his authority, does not necessarily reduce the killing to manslaughter, if the slayer had no reason to believe himself in imminent danger of life, or great bodily harm, and the homicide were, in fact, perpetrated, not in passion or sudden heat, upon the provocation of the arrest, but with cool, deliberate malice and premeditation." Citations omitted; quoting from *Galvin v State,* 46 Tenn 283, 292 (1869).

We find no error in submitting this case to the jury on a charge of assault with intent to commit murder.

At trial, defense counsel sought to cross-examine government witnesses as to United States Treasury Department regulations describing the procedure to be followed in obtaining and executing search warrants. Defense counsel also sought to introduce photographs of defendant's apartment taken after the premises had been searched and testimonial evidence regarding the extent of the

search and the objects seized. The trial court ruled that the regulations were inadmissible and excluded the evidence as irrelevant. On appeal defendant contends that the Treasury regulations, photographs and testimonial evidence were admissible as part of the res gestae. Defendant further alleges that the trial court unduly restricted the scope of cross-examination and that the evidence was admissible in order to prove that the police acted unlawfully.

In *People v Kayne,* 268 Mich 186, 191–192; 255 NW 758 (1934), the Michigan Supreme Court stated:

"*Res gestae* are the circumstances, facts and declarations which grow out of the main fact, are contemporaneous with it, and serve to illustrate its character.

"No inflexible rule has ever been and probably never can be adopted as to what is a part of the *res gestae*. It must be determined largely in each case by the peculiar facts and circumstances incident thereto; but it may be stated as a fixed rule that, included in the *res gestae* are the facts which so illustrate and characterize the principal fact as to constitute the whole one transaction, and render the latter necessary to exhibit the former in its proper effect." (Citations omitted.)

Accord, *People v Sheehy,* 31 Mich App 628; 188 NW2d 231 (1971).

It is clear that the Treasury regulations were not part of the res gestae. The principal fact at issue during trial was defendant's assault upon the agents and officers and the reasonableness of his conduct. While the actual conduct of the government agents and police officers is clearly part of the res gestae, the abstract formulation of the proper procedure for executing the search warrant is not. The regulations could in no way elucidate

defendant's conduct. Similarly, the photographs and testimonial evidence are not part of the res gestae as both concern events occurring after the assault and afford no explanation of defendant's action.

The extent to which collateral matters may be introduced during cross-examination is within the discretion of the trial court whose decision is subject to review only for an abuse thereof. *People v MacCullough,* 281 Mich 15; 274 NW 693 (1937), *People v Bouchee,* 62 Mich App 132; 233 NW2d 503 (1975). As the evidence which defendant sought to introduce only remotely bore upon the assault, if at all, this Court is unable to say that the trial court, in the present instance, abused its discretion in excluding such evidence.

Our earlier resolution of defendant's claim that he was denied the opportunity to present the defense of resisting an unlawful arrest disposes of his contention that the evidence sought to be introduced was necessary to demonstrate the unlawfulness of the police conduct.

We have carefully considered defendant's remaining assignments of error and find them to be without merit.

Defendant's conviction is affirmed.